**John and Carolyn GESTON, Plaintiffs,**

v.

**Carol K. OLSON, in her official capacity as Executive Director of the North Dakota Department of Human Services, Defendant.**

**Case No. 1:11–cv–044.**

United States District Court,
D. North Dakota,
Southwestern Division.

April 24, 2012.

Order Denying Motion for Stay Pending Appeal Aug. 1, 2012.

Gregory C. Larson, Larson Latham Huettl, LLP, Bismarck, ND, Rene H. Reixach, Woods Oviatt Gilman LLP, Rochester, NY, for Plaintiffs.

Jeanne M. Steiner, Attorney General's Office, Bismarck, ND, for Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DANIEL L. HOVLAND, District Judge.

This is a Medicaid eligibility case. Before the Court are cross-motions for summary judgment filed on August 22, 2011, and October 3, 2011, respectively. *See* Docket Nos. 10 and 13. A number of responsive pleadings were filed by both parties thereafter. *See* Docket No's. 16, 20, 27, 31, and 34. Oral argument was held in Bismarck, North Dakota, on April 12, 2012.

### I. BACKGROUND.

Plaintiff John Geston is a 73-year-old resident of the Missouri Slope Lutheran Care Center (Missouri Slope), a skilled nursing home facility located in Bismarck, North Dakota. He is considered the "institutionalized spouse" for Medicaid purposes. John Geston resided at Edgewood Vista Memory Care facility (Edgewood Vista) prior to moving to Missouri Slope. The cost of his care is $219.25 per day. *See* Docket No. 21-1. Plaintiff Carolyn Geston is married to John Geston. She lives in her home in Bismarck and is considered the "community spouse" for Medicaid purposes.

The defendant, Carol K. Olson, is the Executive Director of the North Dakota Department of Human Services (DHS). North Dakota has elected to participate in the Medicaid program and has designated DHS to implement the program. N.D.C.C. § 50–24.1–01.1. As Executive Director of DHS, Olson is responsible for the administration of the Medicaid program for the State of North Dakota. The Burleigh County Social Services Board acts under the direction and supervision of the

DHS to administer the Medicaid program in Burleigh County, North Dakota.

John Geston entered Missouri Slope on April 19, 2011. His application for Medicaid benefits was filed with the Burleigh County Social Service Board on April 29, 2011. *See* Docket No. 15–1. An asset assessment was included with the application. *See* Docket No. 15–6. Eligibility rules limit the amount of assets or resources[1] a married couple may possess and still qualify for Medicaid. The asset limit for the "institutionalized spouse" is $3,000. The asset limit for the "community spouse" is $109,560. The asset assessment determined that the Geston's total countable assets were $699,144.80. as of July 21, 2010, the date John Geston entered Edgewood Vista. *See* Docket No. 15–6. Subtracting the Geston's combined asset allowance of $112,560 produced an excess asset calculation of $586,854.80.

Thus, it was necessary to spend down the assets if John Geston was to be eligible for Medicaid benefits. A new car and home were purchased along with prepaid burial services, all of which are considered to be exempt assets. Carolyn Geston also purchased an annuity. *See* Docket No. 11–1. The single premium annuity was purchased on November 24, 2010, from Employees Life Company (Mutual) for $400,000. The annuity had an effective date of December 6, 2010, and provides Carolyn Geston with monthly income of $2,734.65. The income of the "community spouse" is not taken into consideration in making a Medicaid eligibility determination for the "institutionalized spouse." The annuity is irrevocable, unassignable, and nontransferable. The annuity has a benefit period of thirteen (13) years, which

period is actuarially sound because it is less than Carolyn Geston's life expectancy which is slightly more than thirteen years. The North Dakota Department of Human Services is named as the primary beneficiary in the first position for at least the total amount of Medicaid benefits paid on behalf of the Gestons.

The record reveals that John Geston applied for Medicaid benefits on April 29, 2011. *See* Docket No. 21–1. The Medicaid application was denied on June 8, 2011. *See* Docket No. 11–2. The basis for denial was that the Gestons' countable assets, which were calculated at $454,691.33, exceeded the $112,560 maximum. The annuity was valued at $383,592.10 which represented the purchase price minus the annuity payments already made. Carolyn Geston's annuity failed to meet the criteria set forth in N.D.C.C. § 50–24.1–02.8(7)(b) and the annuity was determined to be a countable asset. If the corpus of Carolyn Geston's annuity was not treated as a countable asset, John Geston would be eligible for Medicaid benefits.

This action was commenced in federal court on May 13, 2011. *See* Docket No. 1. The action is brought pursuant to 42 U.S.C. § 1983 and the Supremacy Clause. U.S. Const. art. VI. para. 2. The Gestons seek injunctive and declaratory relief declaring N.D.C.C. § 50–24.1–02.8(7) invalid and preempted by federal law because it is more restrictive than federal law and impermissibly allows DHS to consider a community spouse's income in determining an institutionalized spouse's Medicaid eligibility. The Court has federal question jurisdiction as the primary issue is whether the

---

**1.** The terms asset and resource are used interchangeably in the applicable statutes, rules and regulations.

federal Medicaid Act has been violated. *See* 28 U.S.C. § 1331.

## II. STANDARD OF REVIEW.

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 654 (8th Cir.2007); *see* Fed.R.Civ.P. 56(c). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id.*

The Court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. *Diesel Mach., Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir.2005). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact. *Simpson v. Des Moines Water Works*, 425 F.3d 538, 541 (8th Cir.2005). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R.Civ.P. 56(e)(2). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

There are no material facts in dispute in this case and only questions of law remain. The parties agree summary judgment is appropriate.

## III. LEGAL DISCUSSION.

### A. PRIVATE CAUSE OF ACTION UNDER 42 U.S.C. § 1983.

Before proceeding to the merits of the action it is necessary to determine whether the statutory provisions at issue provide the Gestons a private cause of action under 42 U.S.C. § 1983. The Gestons contend the North Dakota rules and regulations for Medicaid eligibility are in direct conflict with federal Medicaid law. Specifically, they argue that N.D.C.C. § 50–24.1–02.8(7)(b) adds requirements not authorized by Congress which conflict with 42 U.S.C. §§ 1396a(a)(10)(C)(i), 1396a(a)(17), 1396a(r)(2)(B) and 1396r–5(b)(1). Section 50–24.1–02.8(7)(b) of the North Dakota Century Code uses a formula which treats some annuities as an asset which results in John Geston being ineligible for Medicaid benefits. DHS contends the Medicaid provisions cited by the Gestons do not provide a private cause of action under 42 U.S.C. § 1983.

■■■ 42 U.S.C. § 1983 provides a private cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Section 1983 actions may be brought against state actors to enforce rights created by federal statutes or the Constitution. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 279, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). A plaintiff seeking 42 U.S.C. § 1983 redress "must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (citing *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989)) (emphases in original). The United States Supreme Court looks at three factors in deciding whether a particular statutory provision, enacted pursuant to Congress's spending power,

creates a private right of action under 42 U.S.C. § 1983; (1) Congress intended the provision to benefit the plaintiff; (2) the right asserted is not so "vague and amorphous" that its enforcement would strain judicial competence; and (3) the provision clearly imposes a binding obligation on the States. *Center for Special Needs Trust Admin., Inc. v. Olson,* 676 F.3d 688, 698–99 (8th Cir.2012); *Lankford v. Sherman,* 451 F.3d 496, 508 (8th Cir.2006). "If the legislation meets this test, there is a presumption it is enforceable under section 1983." *Lankford,* 451 F.3d at 508 (citing *Blessing,* 520 U.S. at 341, 117 S.Ct. 1353). If the legislation meets the three *Blessing* prongs, it is presumed enforceable under Section 1983. The presumption is rebutted if Congress explicitly or implicitly forecloses enforcement under Section 1983. However, the availability of administrative remedies alone cannot defeat the plaintiff's ability to invoke Section 1983. *Lankford,* 451 F.3d at 508. Congress has created no such enforcement scheme for Medicaid disputes, and DHS does not contend that Congress has done so. *See Ark. Med. Soc'y, Inc. v. Reynolds,* 6 F.3d 519, 528 (8th Cir.1993) (citing *Wilder v. Va. Hosp. Ass'n,* 496 U.S. 498, 520–23, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990)).

### 1. *42 U.S.C. § 1396a(a)(17).*

■ One of the statutory provisions relied upon by the Gestons is 42 U.S.C. § 1396a(a)(17). This provision states as follows:

> A state Medicaid plan must "include reasonable standards ... for determining eligibility for and the extent of medical assistance under this plan."

42 U.S.C. § 1396a(a)(17). In *Lankford,* the Eighth Circuit Court of Appeals found the statutory language that required state plans to include reasonable standards for determining eligibility in 42 U.S.C. § 1396a(a)(17) "insufficient to evince a congressional intent to create individually-enforceable federal rights." *Id.* at 509. The Ninth and Tenth Circuits have also found that 42 U.S.C. § 1396a(a)(17) does not create a private cause of action under 42 U.S.C. § 1983. *Watson v. Weeks,* 436 F.3d 1152, 1162–63 (9th Cir.2006) (finding 42 U.S.C. § 1396a(a)(17) fails the first prong of the *Blessing* test as it fails to even mention persons or individuals); *Hobbs v. Zenderman,* 579 F.3d 1171, 1182–83 (10th Cir.2009) (finding no individual entitlement). The Court finds that the Gestons do not have a private cause of action under 42 U.S.C. § 1396a(a)(17).

### 2. *42 U.S.C. §§ 1396a(a)(10)(C)(i) and 1396a(r)(2)(B).*

■ The Gestons also rely on 42 U.S.C. §§ 1396a(a)(10)(C)(i) and 1396a(r)(2)(B). These statutory provisions must be read together as 42 U.S.C. § 1396a(r)(2)(B) defines the controlling phrase "no more restrictive." The statutes provide as follows:

> [T]he plan must include a description of (I) the criteria for determining eligibility of *individuals* in the group for such medical assistance, (II) the amount, duration, and scope of medical assistance made available to *individuals* in the group, and (III) the single standard to be employed in determining income and resource eligibility for all such groups, and the methodology to be employed in determining such eligibility, which shall be *no more restrictive* than the methodology which would be employed under the supplemental security income program in the case of groups consisting of aged, blind, or disabled individuals in a State in which such program is in effect, and which shall be *no more restrictive* than the methodology which would be employed under the appropriate State plan (described in subparagraph (A)(i) to which such group is most closely categorically related in the case of other groups;

42 U.S.C. § 1396a(a)(10)(C)(i) (emphasis added).

> For purposes of this subsection and subsection (a)(10) of this section, methodology is considered to be *"no more restrictive"* if, using the methodology, additional *individuals* may be eligible for medical assistance and no *individuals* who are otherwise eligible are made ineligible for such assistance.

42 U.S.C. § 1396a(r)(2)(B).

■ On their face these statutory provisions are phrased in terms of "individuals" and require state plans to adopt an eligibility methodology which is no more restrictive than that employed under the supplemental security income program. A statute must focus on an individual entitlement in order to satisfy the first prong of the *Blessing* test. *Lankford,* 451 F.3d at 508. The focus of these statutory provisions is eligibility criteria for "individuals." 42 U.S.C. § 1396a(a)(10)(C)(i). Tellingly, the definition of "no more restrictive" twice speaks of individuals. 42 U.S.C. § 1396a(r)(2)(B). Section 1396a(r)(2)(B) permits adoption of an eligibility methodology which makes "additional individuals" eligible for medical assistance and forbids a methodology which results in otherwise eligible "individuals" being made ineligible. The failure to make any reference to individuals or persons was the fatal flaw that led to the conclusion that 42 U.S.C. § 1396a(a)(17) did not confer a private cause of action. *Lankford,* 451 F.3d at 509; *Watson,* 436 F.3d at 1162. However, the statutory provisions under consideration here clearly reveal an intent to benefit individuals such as the Gestons. *See Markva v. Haveman,* 168 F.Supp.2d 695, 711–12 (E.D.Mich.2001) (finding 42 U.S.C. § 1396a(a)(10)(C)(i) benefits individuals and provides a private right of action).

DHS relies on *Hobbs v. Zenderman,* 579 F.3d 1171, 1181–82 (10th Cir.2009) (concluding 42 U.S.C. § 1396a(a)(10)(C)(i) does not provide a private right of action). In *Hobbs,* the Tenth Circuit Court of Appeals construed 42 U.S.C. § 1396a(a)(10)(C)(i) in conjunction with 42 U.S.C. § 1396a(a)(17) and found the first prong of the *Blessing* test had not been met. *Hobbs,* 579 F.3d at 1181. The Court explained the references to individuals were tangential or passing references which did not provide the necessary rights-creating language.

■ The Court finds *Hobbs* unpersuasive. As the Court reads the statutory provisions in question, individuals are the focus. When a provision provides for the needs of a particular person, an individual right has been created. *Gonzaga Univ.,* 536 U.S. at 288, 122 S.Ct. 2268. The statutory provisions in question speak to establishing "criteria for determining eligibility for *individuals* in the group" and assuring no *individuals* otherwise eligible are made ineligible. 42 U.S.C. §§ 1396a(a)(10)(C)(i) and 1396a(r)(2)(B) (emphasis added). Such references are not tangential. This Court's interpretation is consistent with the Ninth Circuit's finding in *Watson* that the operative phrase " '[a] State plan ... must provide for making medical assistance available ... *to all individuals.*' " "unmistakably focused on the specific individuals benefitted," and thus satisfied the first prong of the *Blessing* test. *Watson,* 436 F.3d at 1160, (finding a private right of action under 42 U.S.C. § 1396a(a)(10)).

The second prong of the *Blessing* test asks whether the asserted right is "so vague and amorphous" as to be beyond the competence of the judiciary to enforce. *Lankford,* 451 F.3d at 508. The statutory provisions in question here are neither vague nor amorphous, and they provide an objective standard, no more restrictive, which is capable of judicial construction. *See Watson,* 436 F.3d at 1161. Statutory provisions which call for reasonable standards or substantial compliance have been

rejected while those that are expressed in terms of objective standards have been approved. *Blessing*, 520 U.S. at 343, 117 S.Ct. 1353 (rejecting substantial compliance); *Lankford*, 451 F.3d at 509 (rejecting reasonable standards); *Watson*, 436 F.3d at 1161 (approving objective standards). Whether a state plan applies eligibility criteria which results in individuals who are otherwise eligible being made ineligible will be readily apparent. Such an objective standard cannot be said to be vague or amorphous. As such, the second prong of the *Blessing* test is met.

■ Finally, the third prong under the *Blessing* test is whether the statutory provisions unambiguously impose a binding obligation on the states. *Lankford*, 451 F.3d at 508. "In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." *Blessing*, 520 U.S. at 341, 117 S.Ct. 1353. 42 U.S.C. § 1396a(a)(10)(C)(i) begins by stating "the plan *must*" and then describing the eligibility requirements including the command that the methodology to be employed "*shall* be *no more* restrictive." 42 U.S.C. § 1396a(a)(10)(C)(i) (emphasis added). "42 U.S.C. § 1396a(r)(2)(B) requires that "no individuals" other wise eligible may be made ineligible". This language is mandatory and the third prong of the *Blessing* test has been satisfied. In summary, the Gestons meet the three-part *Blessing* test for a private right of action under 42 U.S.C. § 1983.

### 3. *42 U.S.C. § 1396r–5(b)(1).*

■ The final statutory provisions relied upon by the Gestons is 42 U.S.C. § 1396r–5(b)(1). This statute provides as follows:

(b) Rules for treatment of income

(1) Separate treatment of income

During any month in which an institutionalized spouse is in the institution, except as provided in paragraph (2), *no* income of the community spouse shall be deemed available to the institutionalized spouse.

42 U.S.C. § 1396r–5(b)(1).

■ The Court finds that 42 U.S.C. § 1396r–5(b)(1) also passes the three-prong *Blessing* test. This statutory provision is phrased in terms of the individual benefitted: the "community spouse." The statute provides "no income of the community spouse shall be deemed available to the institutionalized spouse." 42 U.S.C. § 1396r–5(b)(1). The focus on the individual is unmistakable. It is to be expected as Congress enacted 42 U.S.C. § 1396r as part of the Medicaid Catastrophic Care Act in an attempt to prevent the pauperization of the community spouse. *Blumer*, 534 U.S. at 477, 122 S.Ct. 962; *Vieth v. Ohio Dept. of Job & Family Servs.*, No. 08AP–635, 2009 WL 2331870, at *3 (Ohio Ct.App. July 30, 2009). Second, the right not to have income deemed available to the "institutionalized spouse" provides a straightforward objective standard capable of judicial enforcement. Either the plan in question deems income available to the "institutionalized spouse" or it does not. Finally, the provision uses the mandatory language "no income" and "shall" and these terms provide no discretion to the states. The three-part *Blessing* test for a private right of action under 42 U.S.C. § 1983 has been met. Because the *Blessing* test is met and Congress has not foreclosed Section 1983 enforcement under the Medicaid Act, the Gestons have a private cause of action under 42 U.S.C. § 1983. The Court concludes that 42 U.S.C. § 1396r–5(b)(1) provides for a private cause of action.

### B. *SUPREMACY CLAUSE.*

In the second claim the Gestons set forth the same argument as asserted in

their civil rights claim under 42 U.S.C. § 1983, but do so under the Supremacy Clause. U.S. Const. art. VI. para. 2. The Gestons contend that Section 50–24.1–02.8(7)(b) of the North Dakota Century Code is preempted by the Supremacy Clause because it is in direct conflict with the Medicaid Act.

■■■ The Supremacy Clause, while not the source of any federal rights, protects federal rights by giving them priority when they conflict with state laws. *Lankford*, 451 F.3d at 509; *Weatherbee v. Richman*, 595 F.Supp.2d 607, 617 (W.D.Pa. 2009). The Supremacy Clause prohibits states from establishing eligibility rules for federal assistance programs that conflict with federal statutes and rules. *Jackson v. Rapps*, 947 F.2d 332, 336 (8th Cir.1992). When a state receives Medicaid matching funds it must comply with all federal regulations and statutes. *Lankford*, 451 F.3d at 510.

Under the preemption doctrine, state laws that "interfere with, or are contrary to the laws of congress, made in pursuance of the constitution" are preempted. *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991), *quoting Gibbons v. Ogden*, 9 Wheat. 1, 22 U.S. 1, 9, 6 L.Ed. 23 (1824). Where Congress has not expressly preempted or entirely displaced state regulation in a specific field, as with the Medicaid Act, "state law is preempted to the extent that it actually conflicts with federal law." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203–04, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). An actual conflict arises where compliance with both state and federal law is a "physical impossibility," or where the state law " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Id.*, *quoting Fla.*

*Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963) *and Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941). While Medicaid is a system of cooperative federalism, the same analysis applies; once the state voluntarily accepts the conditions imposed by Congress, the Supremacy Clause obliges it to comply with federal requirements. *See Jackson v. Rapps*, 947 F.2d 332, 336 (8th Cir.1991) (applying conflict preemption doctrine to state AFDC law, analogous to Medicaid's system of cooperative federalism). *See also King v. Smith*, 392 U.S. 309, 316, 326–27, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324, 337 (5th Cir.2005) ("once a state has accepted federal funds, it is bound by the strings that accompany them").

*Lankford*, 451 F.3d at 509–10. The Court finds that the Gestons have stated a valid Supremacy Clause claim.

## C. MEDICAID OVERVIEW.

■■■ The Medicaid program, enacted as Title XIX to the Social Security Act, was created by Congress in 1965 as a cooperative federal-state program designed to furnish medical assistance to persons "whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396. The Medicaid Act, 42 U.S.C. §§ 1396–1396v, "is a federal aid program designed to help the states provide medical assistance to financially-needy individuals, with the assistance of federal funding." *Lankford v. Sherman*, 451 F.3d 496, 504 (8th Cir.2006). The administration of the Medicaid Act is entrusted to the Secretary of the United States Department of Health and Human Services who in turn exercises its authority through the Centers for Medicare and Medicaid Services (CMS), formerly known

as the Health Care Financing Administration (HCFA). *Wisc. Dept. of Health and Family Servs. v. Blumer*, 534 U.S. 473, 479 n. 1, 122 S.Ct. 962, 151 L.Ed.2d 935 (2002). While states are not required to participate in Medicaid, all of them do. *Ark. Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 275, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006). Once a state chooses to participate in the Medicaid program it must comply with the federal statutory and regulatory scheme. *Harris v. McRae*, 448 U.S. 297, 301, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980); *Lankford*, 451 F.3d at 504. Participating states must establish a plan to implement the program. 42 U.S.C. § 1396a. State plans must be approved by CMS. 42 U.S.C. § 1396a; 42 C.F.R. § 430.10. State Medicaid plans must comply with numerous prerequisites. 42 U.S.C. § 1396a(a)(1)-(65). In formulating a plan, states may consider only such income and assets as are determined by rules prescribed by the Department of Health and Human Services available to the applicant. *Blumer*, 534 U.S. at 473, 122 S.Ct. 962. Failure to conform with federal laws and regulations may result in a state's loss of federal aid for its Medicaid program. 42 U.S.C. § 1396c.

Medicaid eligibility rules limit the amount of assets or resources a married couple may possess and still qualify for Medicaid. When both spouses live together in the community their income and assets are considered available to one another. When one spouse enters a nursing home the rules become more complex. *See Johnson v. Guhl*, 91 F.Supp.2d 754, 760 (D.N.J.2000). The allocation of income and resources between the "community spouse" and the "institutionalized spouse" are addressed in the Medicare Catastrophic Care Act of 1988. 42 U.S.C. § 1396r–5. The purpose of the Act was to protect the "community spouse" from pauperization while preventing financially-secure couples from obtaining Medicaid benefits. *Blu-*

*mer*, 534 U.S. at 480, 122 S.Ct. 962. To accomplish this purpose, Congress and the Secretary have established a very complex set of laws and regulations which states must comply with in allocating a married couple's income and assets. *Id.*

### 1. Medicaid Income and Resource Limits for "Community Spouses."

42 U.S.C. § 1396r–5 (enacted in 1988) addresses the allocation of income and resources between spouses when one spouse applies for Medicaid because he requires long-term institutional care, while the other spouse continues to reside in the community. As described below, the assets of both spouses are considered in determining eligibility, regardless of who holds title; only the institutionalized spouse's income is considered; the income of the "community spouse" is not considered; and the "community spouse" is allowed to keep the couple's home, one automobile, personal items, and certain other forms of property. 42 U.S.C. §§ 1382b(a) and 1396r–5(c)(5).

The institutionalized spouse is expected to spend down his assets and income to defray the costs of his care. To prevent impoverishment of the community spouse, the Medicaid statute allows the community spouse to retain liquid assets or "resources," up to a certain threshold, also known as the "Community Spouse Resource Allowance" (CSRA). 42 U.S.C. § 1396r–5(f)(2)(A). The law also allows the community spouse to receive an allowance from the income of the institutionalized spouse, known as the "minimum monthly maintenance needs allowance," if the community spouse's own income is below a certain threshold. *Id.* 42 U.S.C. § 1396r–5(d)(1), (2).

Liquid assets and other countable "resources" of the two spouses, measured at the time the institutionalized spouse is institutionalized, are divided equally between

the spouses. 42 U.S.C. § 1396r–5(c)(1)(A)(ii). This division is used to calculate the CSRA. *Id.* 42 U.S.C. § 1396r–5(f)(2). At the time of application for Medicaid, all of the couple's resources are considered available to the institutionalized spouse, minus $1600 for the institutionalized spouse, and minus the CSRA for the community spouse as established by each state. *Id.* 42 U.S.C. § 1396r–5(c)(2)(B). Once the institutionalized spouse's eligibility has been established, the resources of the community spouse are no longer considered available to the institutionalized spouse. *Id.* 42 U.S.C. § 1396r–5(c)(4).

The Medicaid statute treats the community spouse's income differently from resources. If a community spouse receives income in her own name, it is not considered to be available to the institutionalized spouse and, therefore, is not considered for purposes of determining his eligibility. 42 U.S.C. § 1396r–5(b)(1), (2)(A)(I).

Asset allocation is governed by 42 U.S.C. § 1396r–5(c) and (f). Assets are valued as of the date of continuous institutionalization rather than the date of application. 42 U.S.C. § 1396r–5(c)(1)(B). Because of this, married couples are often advised to request a Medicaid valuation of their assets as soon as one of them enters a nursing home, even if they know they will not qualify until they spend down their assets. Frolick and Brown, *Advising the Elderly or Disabled Client,* ¶ 14.03[4] (2nd ed.2011). It is easier to value assets contemporaneously rather than to reconstruct values for a date several months or years in the past. One-half of the total assets is allocated to each spouse and is known as the spousal share. 42 U.S.C. § 1396r–5(c)(1)(A)(ii). An applicant may transfer assets to his or her spouse so long as the transfer is solely for the spouse's benefit. 42 U.S.C. § 1396p(c)(2)(B)(I).

The institutionalized spouse is permitted a personal allowance of $3,000. 20 C.F.R. § 416.1205. The community spouse is permitted to retain assets up to a certain threshold set by the state. 42 U.S.C. § 1396r–5(f)(2)(A). In this case, the parties agree the CSRA is $109,560. The institutionalized spouse becomes eligible for Medicaid once the couple's assets fall below the combined total of the personal allowance and the CSRA. It is undisputed in this case that this amount is $112,560 Another perspective is that all assets above the combined total of the CSRA and the institutionalized spouse's personal allowance must be spent before eligibility is achieved. *Blumer,* 534 U.S. at 483, 122 S.Ct. 962.

One common strategy for dealing with excess assets is for the community spouse to purchase an annuity. Frolick and Brown, *Advising the Elderly or Disabled Client,* ¶ 13.06 (2nd ed.2011). Congress made significant changes to the Medicaid rules relating to annuities and the transfer of assets when it passed the Deficit Reduction Act of 2005. 42 U.S.C. § 1396p. The transfer of assets for less than fair market value will result in a penalty. 42 U.S.C. § 1396p(c). However, the Deficit Reduction Act provides that an annuity is not to be treated as a transfer of assets for less than fair market value if the state is named as the first remainder beneficiary up to the amount paid on behalf of the institutionalized spouse. 42 U.S.C. § 1396p(c)(1)(F). In addition, an annuity will be treated as an asset *unless* the annuity is (1) irrevocable and nonassignable; (2) actuarially sound; and (3) provides for payments in equal amounts during its term with no deferral or balloon payments. 42 U.S.C. § 1396p(c)(1)(G)(ii). The Deficit Reduction Act of 2005 also requires the disclosure on the Medicaid application of any annuities held by the community or institutionalized spouse. 42 U.S.C. § 1396p(e)(1). Annuities which comply with these requirements are con-

sidered qualifying annuities. *See Lopes v. Starkowski,* No. 3:10–CV–307, 2010 WL 3210793, at *5 (D.Conn. Aug. 12, 2010); *see also Jackson v. Selig,* No. 3:10–CV00276, 2010 WL 5346198, at *3 (E.D.Ark. Dec. 22, 2010).

### 2. *Annuities Can Be Income or Resources.*

An annuity is a contract by which the annuitant purchases the right to receive monthly payments for a specified period of time in exchange for the payment of an amount of principal. The Medicaid program does not specifically address whether an annuity is income or a resource. In 2005, Congress enacted restrictions on the use of annuities purchased by Medicaid recipients and their spouses to limit improper transfers of assets in anticipation of Medicaid eligibility. *See* Deficit Reduction Act of 2005(DRA), Pub.L. No. 109–171, § 6012 (2005), codified as amendments to 42 U.S.C. § 1396p. As previously noted, to avoid being considered a transfer of assets, an annuity purchased by a Medicaid applicant must be actuarially sound, irrevocable, and non-assignable, and must provide for payments in equal amounts during its term with no deferred or balloon payments. *Id.* 42 U.S.C. § 1396p(c)(1)(G). The annuity contract must name the State Medicaid agency as the remainder beneficiary for at least the total amount of medical assistance paid on behalf of the institutionalized individual under the Medicaid program. *Id.* 42 U.S.C. § 1396p(c)(1)(F)(I). The Deficit Reduction Act amendments also require the disclosure of any interest an individual or community spouse has in an annuity. *Id.* 42 U.S.C. § 1396p(3)(1), and provide for notice to the State by the annuity issuer of any changes in the interest or principal withdrawn. *Id.* 42 U.S.C. § 1396p(e)(2)(B). The Deficit Reduction Act amendments do not specifically address whether payments from an irrevocable and non-assignable annuity are to be treated as income or a resource.

However, Social Security Administration (SSA) regulations and policy guidance do address the issue. Those regulations and policies are relevant because a state may consider an individual eligible for Medicaid if he is eligible for certain cash assistance programs under the Social Security Act, including the SSI program established by Title XVI of the Social Security Act. 42 U.S.C. § 1396a(a)(10)(C)(i). In determining financial eligibility for persons aged 65 or older, a state, with a few exceptions not relevant here, may not use a more restrictive methodology for determining Medicaid eligibility than is used for SSI eligibility, though it is free to use a less restrictive methodology. *See* 42 U.S.C. § 1396a(r)(2)(A)(i). *See also James v. Richman,* 547 F.3d 214, 218 (3d Cir.2008) ("the Department [of Public Welfare] can not treat as available resources any assets that the SSI regulations would not treat as available resources"). Therefore, because no Medicaid provision specifically addresses the issue, SSI provisions govern.

While nothing in Title XVI of the Social Security Act is absolutely on point, Social Security Administration (SSA) regulations for Supplemental Security Income (SSI) generally treat annuities as income. *See* 20 C.F.R. § 416.1121(a). SSA's program guidance, the Program Operations Manual System (POMS), also states as a "general rule" that annuities are income—albeit "unearned income." POMS § SI 00830.160.B.1.

In addition, the SSA defines a resource as "cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance." 20 C.F.R. § 416.1201(a). The regulation further provides that "[i]f the individual has the right, authority, or

power to liquidate the property or his or her share of the property, it is considered a resource." *Id.* 20 C.F.R. § 416.1201(a)(1). On the other hand, "[i]f a property right cannot be liquidated, the property will not be considered a resource of the individual (or spouse)." *Id.* Thus, as a general rule, assets of any kind are not resources if an individual does not have "the legal right, authority, or power to liquidate them."

## D. TREATMENT OF ANNUITIES UNDER N.D.C.C. § 50–24.1–02.8(7).

The primary issue presented in this case is whether Section 50–24.1–02.8(7)(b) of the North Dakota Century Code is consistent with the Medicaid Act. The Gestons contend that Section 50–24.1–02.8(7)(b) adds additional Medicaid eligibility requirements not authorized by Congress. Specifically, they contend N.D.C.C. § 50–24.1–02.8(7)(b) treats the corpus of Carolyn Geston's annuity as an available resource and is more restrictive than federal law allows under 42 U.S.C. §§ 1396a(a)(10)(C)(i) and 1396a(r)(2)(B). The Gestons also contend that Section 50–24.1–02.8(7)(b) is invalid because 42 U.S.C. § 1396r–5(b)(1) prohibits DHS from treating the income stream from a community spouse's annuity as available to the institutionalized spouse. It is undisputed that the annuity Carolyn Geston purchased is a qualifying annuity under the federal rules and regulations. It is also undisputed that Carolyn Geston's annuity does not comply with N.D.C.C. § 50–24.1–02.8(7)(b). DHS contends that Section 50–24.1–02.8(7)(b) complies with federal law.

North Dakota's Medicaid eligibility rules mirror the federal rules in their treatment of annuities, at least in part. The analysis of any annuity begins with N.D.C.C. § 50–24.1–02.8(6). Section 50–24.1–02.8(6) provides that the purchase of an annuity is a *disqualifying transfer* of an asset unless the annuity complies with the following criteria:

a. The state is named as the remainder beneficiary in the first position for at least the total amount of medical assistance paid on behalf of the annuitant or the state is named in the second position after the community spouse or minor or disabled child and is named in the first position if the community spouse or a representative of the minor or disabled child disposes of any remainder for less than fair market value;

b. The annuity is purchased from an insurance company or other commercial company that sells annuities as part of the normal course of business;

c. The annuity is irrevocable and neither the annuity nor payments due under the annuity may be assigned or transferred;

d. The annuity provides substantially equal monthly payments of principal and interest and does not have a balloon or deferred payment of principal or interest. Payments will be considered substantially equal if the total annual payment in any year varies by five percent or less from the payment in the previous year; and

e. The annuity will return the full principal and interest within the purchaser's life expectancy as determined in accordance with actuarial publications of the office of the chief actuary of the social security administration.

N.D.C.C. § 50–24.1–02.8(6). Sections 50–24.1–02.8(6)(c)–(e) correspond with 42 U.S.C. § 1396p(c)(1)(G)(ii) which provides that an annuity will be treated as an asset unless:

(ii) the annuity—

(I) is irrevocable and nonassignable;

(II) is actuarially sound (as determined in accordance with actuarial publications

of the Office of the Chief Actuary of the Social Security Administration); and

(III) provides for payments in equal amounts during the term of the annuity, with no deferral and no balloon payments made.

42 U.S.C. § 1396p(c)(1)(G)(ii). Section 50–24.1–02.8(6)(a) corresponds with 42 U.S.C. § 1396p(c)(1)(F)(I) which provides as follows:

the purchase of an annuity shall be treated as the disposal of an asset for less than fair market value unless—

(I) the State is named as the remainder beneficiary in the first position for at least the total amount of medical assistance paid on behalf of the institutionalized individual under this subchapter.

42 U.S.C. § 1396p(c)(1)(F)(I).

It is undisputed that Carolyn Geston's annuity meets all of the requirements of Section 50–24.1–02.8(6) and *is not* considered a disqualifying transfer. However, under North Dakota law, annuities must also comply with Section 50–24.1–02.8(7). If an annuity fails under Section 50–24.1–02.8(7) the annuity is considered a countable asset or resource. Section 50–24.1–02.8(7) provides as follows:

An annuity purchased on or after February 8, 2006, or a payment option selected or altered on or after February 8, 2006, with respect to an annuity purchased at any time is an asset for purposes of this chapter unless:

a. The annuity meets all of the requirements of subsection 6;

b. The monthly payments from all annuities owned by the purchaser that comply with this subsection do not exceed the minimum monthly maintenance needs allowance for a community spouse of the maximum amount allowed pursuant to 42 U.S.C. 1396r–5 and, at the time of application for benefits under this chapter, the total combined income from all sources of the purchaser and the purchaser's spouse, or the annuitant and the annuitant's spouse, does not exceed one hundred fifty percent of the minimum monthly maintenance needs allowance allowed for a community spouse of the maximum amount allowed pursuant to 42 U.S.C. 1396r–5; and

c. The annuity will return the full principal and has a guaranteed period that is equal to at least eighty-five percent of the purchaser's life expectancy as determined by the life expectancy tables used by the department of human services.

N.D.C.C. § 50–24.1–02.8(7).

The undisputed evidence reveals that Carolyn Geston's annuity satisfies Sections 50–24.1–02.8(7)(a) and (c) but fails to satisfy Section 50–24.1–02.8(7)(b). The effect of Section 50–24.1–02.8(7)(b) is that the combined monthly payments from all annuities cannot exceed $2,739.00, and the total combined monthly income from all sources cannot exceed $4,108.50. Thus, Section 50–24.1–02.8(7) treats some annuities as countable assets and others as income, depending on how much income is derived from the annuity and how much income a couple receives from other sources.

The record reveals that Carolyn Geston's income from her annuity is $2,734.65 per month. This is slightly less than the $2,739.00 permitted by the first part of the state statute. However, it is undisputed that the Gestons have a total combined monthly income, *including Carolyn's annuity,* of $7,903.22. Because the Geston's monthly income is in excess of $4,108.50, the annuity in question was treated as a countable asset. DHS assigned the annuity a market value of $383,592.10, which represented the purchase price minus the annuity payments already made. As a result, the Geston's countable assets amounted to $454,691.33, which is in excess of the $112,560.00, "Community Spouse

Resource Allowance" or CRSA limit for Medicaid eligibility. Consequently, John Geston was found ineligible for Medicaid.

## E. ANALYSIS OF CASE LAW.

Under the Medicaid and SSI provisions of the Social Security Act, an irrevocable annuity can be considered either income or a resource depending on its terms. *See* 42 U.S.C. § 1396p(e)(4) (discussing "income or resources" derived from an annuity). SSA regulations do not address whether the income from an irrevocable and non-assignable annuity can be treated as a resource just because it has a market value—because there is a willing buyer of the annuity's income stream even though the annuity prohibits assignment of that stream. However, SSA policy is to look at the specific terms of the annuity to determine whether the annuity is income or a resource. Under 20 C.F.R. § 416.1201(a)(1), an asset is a resource only if "the individual has the right, authority, or power to liquidate the property or his or her share of the property." POMS § SI 01110.115 clarifies that the individual's right must be a legal right, authority, or power. Thus, a right or power to renegotiate the annuity contract would not suffice to make it a resource. The POMS provision uses an illustration to make this point: where joint owners of property have entered into a legally binding contract not to sell the property without the other's consent, the property is not a resource if consent to a sale is withheld. At such time as consent is given, the property becomes a resource. A logical reading of 20 C.F.R. § 416.1201, as clarified in POMS § SI 01110.115, is that SSA will not require an applicant to renegotiate or breach a contract in order to recover the value of a resource, such as a non-assignable annuity, in order to qualify for Medicaid.

This position is consistent with the only other federal court of appeals to specifical-ly address the income/resource question vis-a-vis an irrevocable annuity. *See James v. Richman*, 547 F.3d 214 (3d Cir. 2008). In that case, James had excess resources of $278,343, and Mrs. James purchased a $250,000 single premium irrevocable annuity with an immediate income stream that could not be transferred, amended, or assigned. The annuity term was eight years, and Mrs. James immediately began receiving monthly annuity payments of $2,937.71 for that period. The Pennsylvania Department of Public Welfare claimed that the James' annuity had a resource value because a finance company in the secondary market for purchasing annuities advised that it would purchase her stream of monthly annuity payments for $185,000. That resource, the state said, disqualified James from Medicaid eligibility. However, the Third Circuit held otherwise. The Third Circuit Court of Appeals determined that "the Department cannot treat as available resources any assets that the SSI regulations would not treat as available resources," *Id.* at 218 (citing 42 U.S.C. § 1396a(a)(10)(C)(i)(III) and 1396a(r)(2)(B)), and determined that SSI regulations would treat Mrs. James' annuity as income, not a resource. *Id.* (citing 20 C.F.R. 416.1201(a)(1) and POMS SI § 01110.115). The Third Circuit said the "power to liquidate" referred to in "the regulation is not simply the *de facto* ability to accomplish a change in ownership of an asset, but must also include the power to do so without incurring legal liability," and Mrs. James "lacks such power...." 547 F.3d at 218. The appellate court said to hold otherwise "would tend to undermine the rule that 'no income of the community spouse shall be deemed available to the institutionalized spouse.' 42 U.S.C. § 1396r–5(b)(1)." 547 F.3d at 219.

The underlying events in *James* predated the passage of the Deficit Reduction Act of 2005 but does not make *James*

distinguishable from this case. The Deficit Reduction Act amendments did not affect the analysis of whether the payment stream from an annuity is income or a resource. *See* 42 U.S.C. § 1396p(e)(4). *See also Weatherbee, ex rel. Vecchio v. Richman,* 595 F.Supp.2d 607, 617 (W.D.Pa. 2009) (Congress did not " 'ring the death knell' for otherwise compliant annuities" when it enacted the Deficit Reduction Act of 2005), *aff'd,* 351 Fed.Appx. 786 (3d Cir. 2009).

DHS relies on *Morris v. Oklahoma Department of Human Services,* 758 F.Supp.2d 1212 (W.D.Okla.2010), which appears to reach the opposite result, but the case is distinguishable. In *Morris,* after two spouses' shares had been determined, the institutionalized spouse attempted to transfer her remaining assets to her husband (the community spouse) to avoid spending down her share of assets. *Morris* distinguished *James* as applying only to asset transfers between spouses *prior* to a determination of eligibility, 758 F.Supp.2d at 1216, and held that allowing a transfer to purchase an annuity for the community spouse *after* an initial determination of eligibility would render the statutory restrictions on spousal assets "toothless." *Id.* at 1217. *Morris* did not specifically address the issue of whether an irrevocable annuity qualifies as a resource or income. *Morris* appears to stand for the proposition that the Deficit Reduction Act of 2005 did not affect the provisions of 42 U.S.C. § 1396r–5 that require that any resources of the couple in excess of the CSRA be considered as available to the institutionalized spouse. *See* 42 U.S.C. § 1396r–5(c)(2)(B); *Jackson v. Selig,* No. 3:10–CV–00276, 2010 WL 5346198 (E.D.Ark. Dec. 22, 2010) (holding annuity purchase was not an improper transfer of assets; declining to follow *Morris* because the Medicaid statute prohibits attributing income of the community spouse to the institutionalized spouse).

The treatment of annuities under the Medicaid Act, and various state implementing rules, has spawned numerous legal challenges since the passage of the Deficit Reduction Act of 2005. Some states have taken a dim view of annuities and have attempted to curtail their use in various ways. Most of the courts which have considered whether a federally-compliant annuity may be treated as an asset or resource have found that treating the annuity as a resource violates federal law. *James v. Richman,* 547 F.3d 214, 219 (3d Cir.2008) (finding annuity cannot be treated as an available resource); *Weatherbee v. Richman,* 595 F.Supp.2d 607 (W.D.Pa. 2009), *aff'd* 351 Fed.Appx. 786 (3d Cir. 2009) (finding state law which treated an annuity as a resource was preempted by federal law); *Jackson v. Selig,* No. 3:10–CV–00276, 2010 WL 5346198 (E.D.Ark. Dec. 22, 2010) (finding Congress could have prohibited using annuities for Medicaid planning but chose not to do so); *Rorick v. Ohio Dep't of Job and Family Servs.,* No. C–090627, 2010 WL 4683716 (Ohio Ct.App., Nov. 19, 2010) (finding the reasoning of *James* and *Weatherbee* persuasive); *Lopes v. Starkowski,* No. 3:10–CV–307, 2010 WL 3210793 (D.Conn. Aug. 12, 2010) (finding state law which treated a federally-compliant annuity as a resource rather than income was more restrictive than federal law); *J.P. v. Mo. State Family Support Div.,* 318 S.W.3d 140, 147 (Mo. Ct.App.2010) (finding federal law defines payments received from an annuity as income); *Vieth v. Ohio Dep't of Job and Family Servs.,* No. 08AP–635, 2009 WL 2331870 (Ohio Ct.App., July 30, 2009) (finding federally-compliant annuities are not countable resources); *contra Morris v. Okla. Dep't of Human Servs.,* 758 F.Supp.2d 1212, 1216 (distinguishing *James* and other cases which involved annuities purchased prior to an application for Medicaid); *N.M. v. Div. of Med. Assis-*

*tance and Health Servs.*, 405 N.J.Super. 353, 964 A.2d 822, 829 (N.J.Super.Ct.App.Div.2009) (finding the annuity income stream could be sold and thus was a countable resource).

## 1. THE "NO MORE RESTRICTIVE" REQUIREMENT.

█ The Gestons argue that Section 50–24.1–02.8(7)(b) of the North Dakota Century Code is more restrictive than federal law. A state's Medicaid income and resource eligibility requirements are permitted to be more liberal than federal law but can be "no more restrictive" than the methodology which would be employed to determine eligibility under the supplemental security income (SSI) program. 42 U.S.C. § 1396a(a)(10)(C)(i). A methodology is "no more restrictive" if more individuals may be eligible and "no individuals who are otherwise eligible are made ineligible." 42 U.S.C. § 1396a(r)(2)(B). DHS contends that this means the Gestons would have to show they would be otherwise eligible for SSI. The Court disagrees. The Court finds the reasoning of the Third Circuit Court of Appeals in *James v. Richman*, 547 F.3d 214 (3d Cir.2008) to be persuasive. The issue is not whether the Gestons are eligible for SSI, but whether the state's treatment of annuities for Medicaid purposes would admit fewer applicants than the treatment of annuities under SSI rules and regulations. In simple terms, the treatment of annuities under state Medicaid eligibility rules must be the same or less restrictive than the treatment of annuities under SSI rules.

Thus, it is necessary to examine how annuities are treated under the SSI regulations. The applicable regulation provides that if the individual has the "right, authority or power to liquidate the property ... it will be considered a resource" and "if a property right cannot be liquidated, the property will not be considered a resource." 20 C.F.R. § 416.1201(a)(1). Re-

sources are defined as cash or other liquid assets. 20 C.F.R. § 416.1201(a). Annuity payments are treated as unearned income for SSI purposes. 42 U.S.C. § 1382a(a)(2)(B). The SSI Program Operations Manual System (POMS) provides some guidance. The general POMS rule is that "assets of any kind are not resources if the individual does not have the legal right, authority, or power to liquidate them." *See* POMS SI § 01110.115. Annuities, along with pensions, retirement benefits and disability benefits, are considered unearned income. *See* POMS SI § 00830.160.

In *James*, the community spouse lacked the power to change the ownership of her annuity because it was not assignable or transferable. 547 F.3d at 218. The argument that the annuitant had the de facto ability to sell the annuity was rejected because doing so would cause her to breach the contract and incur legal liability. The Third Circuit Court of Appeals court concluded that because of this restriction the annuity could not be treated as an asset or a resource.

In this case, the annuity specifically provides that it is irrevocable and "may not be transferred, assigned, surrendered or commuted." *See* Docket No. 11–1. The annuity also provides that neither the annuitant nor the beneficiary may be changed and the payee is irrevocable. Thus, Carolyn Geston has no legal right to change ownership of the annuity. The Court finds that the annuity in question is considered income under federal law. 20 C.F.R. § 416.1201(a)(1). No change in ownership of the annuity could be accomplished without breaching the contract and incurring legal liability, and thus the annuity cannot be treated as an available resource. *James*, 547 F.3d at 218.

This Court rejects the suggestion that the annuity is somehow marketable or sa-

leable, or that state law would treat the annuity as saleable. Federal law controls under the circumstances. The annuity in question clearly prohibits Carolyn Geston from liquidating it, and under federal law the annuity cannot be treated as an available resource. *See Weatherbee*, 351 Fed. Appx. at 787 (noting the community spouse had given up a resource for guaranteed income as defined by 42 U.S.C. § 1382a(2)(B)); *J.P.*, 318 S.W.3d at 146–47 (finding the reasoning of *James, Weatherbee* and *Vieth* to be persuasive and the conclusion that annuities must be treated as income mandated by 42 U.S.C. § 1382a(a)(2)(B)); 20 C.F.R. § 416.1201(a)(1). There is no federal provision in Title XIX of the Social Security Administration regulations and policy guidance which corresponds with Section 50–24.1–02.8(7)(b) of the North Dakota Century Code. Clearly, but for the existence of Section 50–24.1–02.8(7)(b), John Geston would qualify for Medicaid. The Court finds that Section 50–24.1–02.8(7)(b) of the North Dakota Century Code is more restrictive than federal law and thus violates 42 U.S.C. §§ 1396a(a)(10)(C)(i) and 1396a(r)(2)(B).

### 2. *COMMUNITY SPOUSE INCOME.*

The Gestons also argue that Section 50–24.1–02.8(7)(b) impermissibly considers community spouse income as part of the institutionalized spouse's eligibility determination. The controlling statute provides that "no income of the community spouse shall be deemed available to the institutionalized spouse." 42 U.S.C. § 1396r–5(b)(1). The well-established rule with regard to the income of the community spouse is that "the community spouse's income is thus preserved for that spouse and does not affect the determination whether the institutionalized spouse qualifies for Medicaid." *Blumer*, 534 U.S. at 480–81, 122 S.Ct. 962.

DHS contends that Section 50–24.1–02.8(7)(b) is not an eligibility determination but only an analyzation of the couple's financial situation in order to determine what constitutes a resource. This is a distinction without difference. Section 50–24.1–02.8(7)(b) clearly considers income in the analysis. The purpose of Section 50–24.1–02.8(7)(b) is to consider the community spouse's income in deciding whether to treat an annuity as income or an asset. Section 50–24.1–02.8(7)(b) takes income into consideration in the analysis of whether the community spouse's "monthly payments from all annuities" is more than allowed, and secondly, in considering whether the "total combined income from all sources" of both spouses is more than allowed. Section 50–24.1–02.8(7)(b) considers the community spouse's annuity income as well as *all* of the community spouse's income from whatever source. The second calculation was the deciding factor in determining John Geston's eligibility for Medicaid. Section 50–24.1–02.8(7)(b) is, without question, an integral part of Medicaid eligibility determination.

The Court finds that Section 50–24.1–02.8(7)(b) violates 42 U.S.C. § 1396r–5(b)(1) which prohibits consideration of the community spouse's income in the institutionalized spouse's Medicaid eligibility determination. *See Jackson*, 2010 WL 5346198 at *3 (noting it would be improper to count income of the community spouse to determine the institutionalized spouse's Medicaid eligibility); *Rorick*, 2010 WL 4683716 at *6 (finding annuity income is not subject to countable asset classification if the annuity complies with the federal annuity rule set out in 42 U.S.C. § 1396p); *Weatherbee*, 595 F.Supp.2d at 611 (the community spouse's income is completely protected and does not affect the institutionalized spouse's eligibility determination); and *Vieth*, 2009 WL 2331870 at *8 (funds used to purchase a federally-compli-

ant annuity are not countable resources for Medicaid eligibility purposes).

### 3. 42 U.S.C. § *1396p(e)(4).*

 DHS also contends that Section 50–24.1–02.8(7)(b) is saved by 42 U.S.C. § 1396p(e)(4) of the Deficit Reduction Act of 2005 which provides as follows:

(e) Disclosure and treatment of annuities

(1) In order to meet the requirements of this section for purposes of section 1396a(a)(18) of this title, a State shall require, as a condition for the provision of medical assistance for services described in subsection (c)(1)(C)(i) of this section (relating to long-term care services) for an individual, the application of the individual for such assistance (including any recertification of eligibility for such assistance) shall disclose a description of any interest the individual or community spouse has in an annuity (or similar financial instrument, as may be specified by the Secretary), regardless of whether the annuity is irrevocable or is treated as an asset. Such application or recertification form shall include a statement that under paragraph (2) the State becomes a remainder beneficiary under such an annuity or similar financial instrument by virtue of the provision of such medical assistance.

(2)(A) In the case of disclosure concerning an annuity under subsection (c)(1)(F) of this section, the State shall notify the issuer of the annuity of the right of the State under such subsection as a preferred remainder beneficiary in the annuity for medical assistance furnished to the individual. Nothing in this paragraph shall be construed as preventing such an issuer from notifying persons with any other remainder interest of the State's remainder interest under such subsection.

(B) In the case of such an issuer receiving notice under subparagraph (A), the State may require the issuer to notify the State when there is a change in the amount of income or principal being withdrawn from the amount that was being withdrawn at the time of the most recent disclosure described in paragraph (1). A State shall take such information into account in determining the amount of the State's obligations for medical assistance or in the individual's eligibility for such assistance.

(3) The Secretary may provide guidance to States on categories of transactions that may be treated as a transfer of asset for less than fair market value.

**(4) Nothing in this subsection shall be construed as preventing a State from denying eligibility for medical assistance for an individual based on the income or resources derived from an annuity described in paragraph (1).**

42 U.S.C. § 1396p(e) (emphasis added).

DHS argues that 42 U.S.C. § 1396p(e)(4) permits states to treat annuities as assets and the Deficit Reduction Act of 2005 was passed in order to close the annuity loophole in the federal scheme. DHS relies upon a New Jersey decision in support of this position. *N.M. v. Div. of Med. Assistance and Health Servs.*, 405 N.J.Super. 353, 964 A.2d 822 (N.J.Super.Ct.App.Div.2009). The New Jersey court in *N.M.* rejected *Weatherbee* and *James* and read 42 U.S.C. § 1396p(e)(4) expansively. However, the court in *N.M.* failed to recognize that the provision limits itself to "this subsection" and does not attempt to change the long-established rule that the community spouse's income is protected. In addition, in *N.M.* the plaintiff had stipulated that the annuity in question was assignable. The Court finds *N.M.* unpersuasive.

A review of current case law on this subject matter reveals that most courts have rejected the *N.M.* court's reading of

42 U.S.C. § 1396p(e)(4) and found it to be self-limiting. *Weatherbee,* 595 F.Supp.2d at 615–16; *Vieth,* 2009 WL 2331870 at *10 (the Deficit Reduction Act does not undermine the rationale of *James* ); *J.P.,* 318 S.W.3d at 146–47 (finding *Weatherbee, James,* and *Vieth* persuasive); *Lopes,* 2010 WL 3210793 at *7. The court in *Weatherbee* held as follows:

> [T]he language of 42 U.S.C. § 1396p(e)(4), when viewed in the context of the subsection as well as pertinent provisions of the Medicaid Act, is unambiguous and does not support the DPW's reading of it. By its terms, 42 U.S.C. § 1396p(e)(4) expressly limits its effect to "this subsection." It does not purport to alter the well-established rule under the Medicaid Act, contained in 42 U.S.C. § 1396r–5, that "no income of the community spouse shall be deemed available to the institutionalized spouse." 42 U.S.C. § 1396r–5(b)(1). Indeed, 42 U.S.C. § 1396r–5(a)(1) provides that, "[i]n determining the eligibility for medical assistance of an institutionalized spouse ..., the provisions of this section supersede any other provision of this subchapter ... which is inconsistent with them." In my view, 42 U.S.C. § 1396p(e)(4) simply makes clear that which would otherwise be implied. Namely, that disclosing the purchase of an annuity and naming the state as a remainder beneficiary will not, in and of itself, prevent a state from denying eligibility for income or resources derived from an annuity. A state could, for example, deny eligibility for a variety of reasons including, but not necessarily limited to, lack of an actuarially sound annuity or where the income from the annuity was not solely for the benefit of the community spouse. Consistent with the "holistic" approach espoused by the courts in the above cases, and having examined 42 U.S.C. § 1396p(e)(4) in context, I conclude that if Congress had

intended to "ring the death knell" for otherwise compliant annuities, it would have said so. It did not.

*Weatherbee,* 595 F.Supp.2d at 616–17. It would make little sense for Congress to set up detailed rules and regulations establishing Medicaid compliant annuities and then allow the states, through 42 U.S.C. § 1396p(e)(4), to reject Congress's plan.

### F. *COSTS AND ATTORNEY FEES.*

■ The Gestons have requested an award of reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988. "[T]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" in any action or proceeding to enforce a provision of 42 U.S.C. § 1983. 42 U.S.C. § 1988(b). "Though the Eleventh Amendment bars an award of damages against a State in a § 1983 action, a federal court may award attorneys' fees and other costs against the State under § 1988 as part of the prospective injunctive relief authorized in the landmark decision *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)." *El–Tabech v. Clarke,* 616 F.3d 834, 837 (8th Cir.2010). The Court finds that the Gestons have prevailed on their civil rights claim under 42 U.S.C. § 1983. The Court, in the exercise of its broad discretion, grants the request for an award of reasonable costs and attorney's fees.

### IV. *CONCLUSION.*

The Medicaid eligibility provisions are not unlike the federal tax code in terms of complexity. If Carolyn Geston should find herself in need of nursing home care during the period of the annuity, the income received from the annuity she purchased would be taken into consideration in determining her eligibility for Medicaid. The North Dakota Department of Human Services is named as the first beneficiary up

to the amount of all Medicaid benefits received by John Geston in the event Carolyn Geston would pass away. There is nothing unreasonable in the passage of Section 50–24.1–02.8(7)(b) of the North Dakota Century Code other than it is contrary to current federal law. If there is a "loophole" under federal law as to the treatment of irrevocable and non-assignable annuities under the Medicaid program, the closing of that "loophole" is best left for Congress to address.

The Plaintiffs' Motion for Summary Judgment (Docket No. 10) is **GRANTED**, and the Defendant's Motion for Summary Judgment (Docket No. 13) is **DENIED**.

The Court finds and orders as follows:

1) 42 U.S.C. §§ 1396a(a)(10)(C)(i), 1396a(r)(2)(B) and 1396r–5(b)(1) create federal rights enforceable under 42 U.S.C. § 1983. The Gestons have met the three-part *Blessing* test for a private right of action under Section 1983;

2) Section 50–24.1–02.8(7)(b) of the North Dakota Century Code violates 42 U.S.C. §§ 1396a(a)(10)(C)(i), 1396a(r)(2)(B) and 42 U.S.C. § 1396r–5(b)(1) and is preempted thereby;

3) The Defendant is enjoined from denying Medicaid benefits to John Geston based on Section 50–24.1–02.8(7)(b) of the North Dakota Century Code;

4) The Plaintiffs are entitled to an award of reasonable costs and attorney's fees and may submit a motion for such pursuant to D.N.D. Civ. L.R. 54.1.

**IT IS SO ORDERED.**

### ORDER DENYING DEFENDANT'S MOTION FOR STAY PENDING APPEAL

Before the Court is the Defendant's motion for a stay pending appeal. See Docket No. 47. The Defendant seeks a stay of the Court's holding that Section 50–01.1–02.8(7)(b) of the North Dakota Century Code is preempted by federal law. The Court denies the motion.

A stay of a ruling pending an appeal is an extraordinary remedy. The Defendant has the burden to justify the stay based on the following factors: (1) likelihood of success on the merits; (2) likelihood of irreparable harm absent a stay; (3) potential for harm to other interested parties if the stay is granted; and (4) potential harm to the public interest if the stay is granted. *Fargo Women's Health Org. v. Schafer*, 1993 WL 603600, *2 (8th Cir.1993) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987); *James River Flood Control Assoc. v. Watt*, 680 F.2d 543, 544 (8th Cir.1982)). After weighing these factors, the Court finds the Defendant has failed to sustain its burden.

The Court held that North Dakota law is preempted by federal law. The Court's holding is in line with the only two federal circuit courts of appeals that have addressed the issue. See *Geston v. Olson*, 857 F.Supp.2d 863, 880, 883–85, 2012 WL 1409344, *14, 17–118 (D.N.D. April 24, 2012)(citing cases); *James v. Richman*, 547 F.3d 214 (3d Cir.2008); *Morris v. Okla. Dept. of Human Servs.*, 685 F.3d 925 (10th Cir.2012). The Defendant has failed to sustain its burden of showing the likelihood of success on the merits.

Irreparable harm is typically shown where the injuries cannot be fully compensated through an award of damages. *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312 (8th Cir.2009); *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 24 (5th Cir.1992). The movant should demonstrate the injury is "both certain and great." *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 976 (D.C.Cir.1985). The Defendant contends it will suffer irreparable harm because the

state will be required to pay Medicaid benefits to those similarly situated and will be unable to recover the monies paid if the Eighth Circuit Court of Appeals reverses on appeal. However, as the Plaintiffs point out, a state may recover medical benefits incorrectly paid under the Medicaid plan. See 42 U.S.C. § 1396p(a)(1)(A). The Defendant has failed to sustain its burden and demonstrate that, if the Eighth Circuit reverses, North Dakota could not recover incorrect payments pursuant to 42 U.S.C. § 1396p(a)(1)(A), or that this federal remedy at law is otherwise inadequate.

The Defendant addresses the potential for injury to other interested parties and the public. The Defendant requests the stay so it may deny Medicaid eligibility to those similarly situated as the Plaintiffs. If a stay is granted, the Defendant has pledged to reverse eligibility decisions and make corrective payments for those erroneously denied if the Eighth Circuit affirms this Court's decision. This addresses the potential for injury to other interested parties if a stay is granted. However, this factor does not overcome the other factors to be considered in granting the extraordinary remedy of a stay pending on appeal.

The Court has carefully reviewed the parties' briefs and the relevant case law. In the exercise of its discretion, the Court finds that the Defendant has failed to demonstrate that a stay pending appeal is warranted under the circumstances. Accordingly, the Court **DENIES** the Defendant's motion for stay pending appeal (Docket No. 47).

**IT IS SO ORDERED.**