

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-12-2008

# James v. Richman

Precedential or Non-Precedential: Precedential

Docket No. 06-5092

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"James v. Richman" (2008). *2008 Decisions.* Paper 182.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/182

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-5092

_____

*JOSEPHINE A. JAMES, as the Administrator
for the Estate of Robert A. James

v.

ESTELLE RICHMAN, in Her Official Capacity
as Secretary of the Commonwealth of Pennsylvania
Department of Public Welfare,

Appellant.

*(Amended Per the Clerk's Order dated 6/28/07)

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 05-cv-02647)
District Judge:  Hon. A. Richard Caputo

_____

Argued on March 4, 2008

Before:  SCIRICA, <u>Chief Judge</u>, FISHER and
ROTH, <u>Circuit Judges</u>

(Opinion filed:  November 12, 2008)

Thomas W. Corbett, Jr., Esquire
Attorney General
Howard G. Hopkirk, Esquire
Calvin R. Koons, Esquire (ARGUED)
Senior Deputy Attorney General
John G. Knorr, III, Esquire
Chief Deputy Attorney General
Chief, Appellate Litigation Section
15th Floor, Strawberry Square
Harrisburg, PA   17102

Counsel for Appellant


Matthew J. Parker, Esquire  (ARGUED)
Marshall, Parker & Associates
303 Allegheny Street
Jersey Shore, PA   17740

_____            _____Counsel for Appellee

Shirley Berger Whitenack, Esquire
Schenck, Price, Smith & King, LLP
10 Washington Street
Morristown, NJ    07963-0905

Sharon Rivenson Mark, Esquire
Law Office of Sharon Rivenson Mark, P. C.
855 Summit Avenue
Jersey City,  NJ   07307

        Counsel for Amicus Appellee National
        Academy of Elder Law Attorneys and
        National Academy of Elder Law Attorneys
        New Jersey Chapter


Stephen H. Kaufman, Esquire
Eric J. Pelletier, Esquire
Offit Kurman, P. A.
8 Park Center Court, Suite 200
Owings Mills, Maryland   21117

        Counsel for Amicus Appellee Financial
        Life Insurance Company

---

O P I N I O N

---

**ROTH**, <u>Circuit Judge</u>:

Estelle B. Richman, Secretary of the Commonwealth of Pennsylvania, Department of Public Welfare (the Department), appeals the order of the District Court for the Middle District of Pennsylvania, enjoining the Department from denying Medicaid benefits to Robert A. James. The central issue to the appeal is whether an annuity, purchased by James's wife Josephine, may be treated by the Department as an available resource in calculating James's eligibility for Medicaid benefits. We agree with the District Court that the Department may not so treat it. We will therefore affirm the judgment of the District Court.

## I. BACKGROUND

### A. Factual Background

Medicaid applicants are required to exhaust all available resources in order to be eligible for benefits. Under the amendments to Medicaid implemented by the Medicare Catastrophic Coverage Act of 1988 (MCCA), 42 U.S.C. § 1396r-5, a spouse living at home (the "community spouse") may reserve certain income and assets to meet his or her monthly needs, making them unavailable to the institutionalized spouse. The MCCA provides that "no income of the community spouse shall be deemed available to the institutionalized spouse," 42 U.S.C. § 1396r-5(b)(1), but shelters only a limited subset of the community spouse's assets under the "community spouse resource allowance" or CSRA. 42 U.S.C. § 1396r-5(c).

4

Robert A. James was a resident of Summit Health Care nursing facility in Wilkes-Barre, Pennsylvania. He was admitted on August 10, 2005, and died on March 24, 2007, while this case was on appeal. James was married to Josephine A. James.

On September 20, 2005, James filed a Resource Assessment with the Department of Public Welfare at the Luzerne County Assistance Office. He stated in the Resource Assessment that, as of August 10, 2005, he and his wife's available resources totaled $381,443.00. After allowing for the CSRA and the institutionalized spouse's allowance, James and his wife then had available resources totaling $278,343.00.

In order to reduce their assets to the level that would qualify Robert James for Medicaid benefits, on September 12, 2005, Josephine James had purchased for $250,000 a single premium immediate irrevocable annuity from General Electric Assurance Company. The annuity was payable to Josephine James over an eight year period in monthly amounts of $2,937.71, beginning October 1, 2005, and ending September 1, 2013. The annuity's terms of the endorsement provided that "[t]his Contract may not be surrendered, transferred, collaterally assigned, or returned for a return of the premium paid. This Contract is irrevocable and has no cash surrender value. An Owner may not amend this Contract or change any designation under this Contract." The parties agree that the annuity is actuarially sound.

On September 15, 2005, Robert James also purchased a new automobile for $28,550. At this point, all the James's

5

resources in excess of those permitted by the CSRA and the institutionalized spouse's allowance had been spent or converted to the annuity.

James's September 20, 2005, Resource Assessment and application for Medicaid coverage to assist with the payment of his nursing facility bill sought eligibility as of September 15, 2005. On November 22, 2005, the Luzerne County Assistance Office determined that Robert James was not eligible for Medicaid assistance because he did not receive fair consideration for the resources used to purchase the annuity.

On December 12, 2005, the Department issued a new notice to Robert James, advising him that the notice he had previously received on November 22, 2005, was rescinded and that he was "ineligible for nursing home payment at this time. Excess resources exist due to the availability of the $250,000 annuity. You may reapply when resources are within eligibility limits." In the Department's view, the annuity had a value of $185,000 and represented a resource that combined with other resources owned by Josephine James exceeded the CSRA. These resources were therefore available to pay for nursing care. The Department offered the declaration of Michael Goodman, Chief Executive Officer of J.G. Wentworth, a finance company specializing in the purchase of annuities, as evidence of the value and marketability of the annuity, despite the non-assignment language in the annuity's endorsement.

Robert James appealed the Department's decision to the Office of Hearings and Appeals. His appeal is still pending.

If denied Medicaid benefits, he would be liable himself to pay for his nursing facility care at a rate of over $5,000 per month.

### B. Procedural History

On December 21, 2005, Robert James filed a complaint against the Department in the District Court, seeking declaratory and injunctive relief under 42 U.S.C. § 1983 and the Supremacy Clause of the U.S. Constitution.[1] On March 6, 2006, James filed a request for a temporary restraining order and a motion for preliminary injunction. On March 20, the District Court granted the request and motion, enjoining the Department from denying Medicaid benefits to James until a final decision on the merits of the action. The parties then agreed to file cross-motions for summary judgment with joint stipulations of facts and exhibits. The District Court entered summary judgment in favor of James on November 21, 2006. The Department appealed.

## II.  <u>DISCUSSION</u>

### A. Jurisdiction and Mootness

The District Court had federal question jurisdiction, as the primary issue presented was whether the Department has

---

[1]The basis of the Supremacy Clause claim was 62 Pa. Stat. Ann. The Department did not consider this statutory provision in enjoining the Department from denying James's request for Medicaid benefits. The Supremacy Clause issue has not been raised on this appeal and we will not consider it.

misinterpreted federal law regarding James's right to Medicaid benefits. 28 U.S.C. § 1331; *See Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir. 1974). We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of a decision to grant or deny summary judgment is plenary. Summary judgment is appropriate where there are no genuine issues of material fact and, when viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *See* F.R.C.P. 56(c); *Pi Lambda Phi Fraternity, Inc. v. University of Pittsburgh*, 229 F.3d 435, 441 n.1 (3d Cir. 2000).

Although James died during the pendency of this appeal, the case is not moot. While his death does moot the continued imposition of the permanent injunction against the Department, nevertheless the District Court adjudicated the question of "ultimate liability" for the costs of nursing care and the Department continues to contest its liability. *See Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1253 n.4 (3d Cir. 1993).

## B. Availability of Equitable Relief

Before addressing the substantive issues in this case, we must first determine whether an equitable remedy is available here. If James had an adequate legal remedy, equitable relief would not be appropriate. *See Roe v. Operation Rescue*, 919 F.2d 857, 867 n.8 (3d Cir. 1990).

We review the decision to provide equitable relief for abuse of discretion. *ACLU v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1476 (3d Cir. 1996). In order to obtain a permanent injunction, a plaintiff must show, among other things,

8

that "he has no adequate legal remedy." *Roe*, 919 F.2d at 867 n.8. The District Court found that James lacked a legal remedy because the 11th Amendment barred recovery of monetary damages should he prove he was unlawfully denied support payments.

The Department argues that the availability of monetary relief through state administrative proceedings precludes a finding of irreparable harm. However, there is no general requirement that plaintiffs exhaust state administrative remedies before bringing a § 1983 action. *Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982); *see also Monroe v. Pape*, 365 U.S. 167, 183 (1961) ("The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.").

We conclude that this precept also holds true in a request for injunctive relief in a § 1983 action. *See DeSario v. Thomas*, 139 F.3d 80, 85-86 (2d Cir. 1998). If we were to decide otherwise, we would in effect be denying the precedential effect of *Patsy* – we would be requiring exhaustion before bringing this type of § 1983 action.. We must therefore decline the Department's request that we impose a *de facto* exhaustion requirement where, as here, a plaintiff may request only equitable relief in the federal forum.

### C. Treatment of Annuities under Medicaid

The central issue in this case is whether a non-revocable, non-transferrable annuity may be treated as an available resource by the Department for the purposes of calculating

9

Medicaid eligibility. We will first address the treatment of the annuity itself, before turning to the possibility of treating the income from the annuity as a separate resource.

In determining whether the annuity may be treated as a resource, the Department cannot use a methodology that is more restrictive than that used by the SSI (Supplemental Security Income) Program. *See* 42 U.S.C. § 1396a(a)(10)(C)(i)(III). A methodology is "considered to be 'no more restrictive' if, using the methodology, additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance." 42 U.S.C. § 1396a(r)(2)(B). Consequently, the Department can not treat as available resources any assets that the SSI regulations would not treat as available resources.

We therefore turn to the treatment of annuities under the SSI regulations. They provide that "if an individual has the right, authority or power to liquidate the property, or his or her share of the property, it is considered a[n] (available) resource." 20 C.F.R. § 416.1201(a)(1). The SSI Program Operations Manual System (POMS)[2] gives the example of jointly owned

---

[2]The SSI Programs Operations Manual System is "the publicly available operating instructions for processing Social Security claims," and though "these administrative interpretations are not products of formal rulemaking, they nevertheless warrant respect." *Artz v. Barnhart*, 330 F.3d 170, 176 (3d Cir. 2003) (citing *Wash. Dept. of Social Servs. v. Keffeler*, 537 U.S. 371 (2003)).

stock subject to a legally binding agreement that neither owner will sell without the consent of the other, and explains that such stock is not an asset unless the co-owner has consented to its sale. POMS SI 01110.115. The POMS makes it clear that the "power to liquidate" referred to by the regulation is not simply the *de facto* ability to accomplish a change in ownership of an asset, but must also include the power to do so without incurring legal liability.

Josephine James lacks such power to change ownership in her annuity. The annuity states on its face that it "may not be surrendered, transferred, collaterally assigned, or returned for a return of the premium paid." Even if the Department is correct that Josephine James has the *de facto* ability to effect a change in ownership of the annuity, she cannot do so without breaching the contract and incurring legal liability. Accordingly, the annuity cannot be treated as an available resource.

Alternatively, the Department argues that Josephine James could create a new annuity, selling the right to an income stream that is equal to the income to which she is entitled from the existing annuity. Such a transaction would not, however, be a transfer of the existing annuity. It cannot therefore be used to support the treatment of the existing annuity as an available resource. Instead, the Department's position would treat the hypothetical proceeds from the creation of a new annuity as a currently available resource. There is no statutory basis for such a theory and, indeed, adopting it would tend to undermine the MCCA rule that "no income of the community spouse shall be deemed available to the institutionalized spouse." 42 U.S.C. § 1396r-5(b)(1). Under such a theory, there is no clear limit on

11

the hypothetical transaction proceeds that could be treated as assets, whether based on the sale of a future stream of payments tied to a fixed income retirement account, social security, or even a regular paycheck.

Finally, the Department argues that granting eligibility for people in James's situation would undercut the purpose of Medicaid, which was not intended as a general welfare program. We begin by noting that Medicaid is established through an exhaustive set of statutes that thoroughly detail what benefits are to be available and to whom they should be provided. *See* 42 U.S.C. § 1396 *et seq*. In this context, we do not create rules based on our own sense of the ultimate purpose of the law being interpreted, but rather seek to implement the purpose of Congress as expressed in the text of the statutes it passed. *See Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001) (explaining that the role of the courts in interpreting a statute is to give effect to Congress's intent, and that it is presumed that Congress expresses its intent through the language of a statute). As discussed above, an irrevocable, non-alienable annuity does not fit the statutory definition of an available resource. In addition, Congress provided a detailed set of rules governing transactions that it considered suspicious, and the purchase of an annuity is not among them. 42 U.S.C. § 1396p(c). We simply cannot allow a denial of eligibility if there is no statutory justification for that denial. Such justification is lacking here.[3]

---

[3]The dissent asserts that the focus for the amount of the James's available resources should be as of August 20, 2005, the date of Robert James's entry into the nursing home, rather than

12

## III. **CONCLUSION**

For the foregoing reasons, we will affirm the judgment of the District Court.

---

as of September 15, 2005, the eligibility date sought in his application. Because we have found that Josephine James's non-revocable, non-transferrable annuity would not be an available resource under SSI regulations, and thus not an available resource under Medicaid, Robert James became eligible for Medicaid coverage as of September 15, 2005. His situation prior to that date is therefore no longer relevant.

FISHER, *Circuit Judge*, dissenting.

The majority concludes that the Department of Public Welfare cannot treat the annuity that Mrs. James purchased on September 12, 2005, as an available resource in determining Mr. James's Medicaid eligibility. I respectfully dissent. I believe that in order to appraise the amount of available resources, our focus must be on the date of Mr. James's admission to the nursing home.

I find the circumstances presented in this case to be distinguishable from an instance where an annuity exists prior to the date of institutionalization. On August 10, 2005, Mr. James was admitted into the Summit Health Care facility and, as of that date, the Jameses had a total of $381,443 in available resources. On September 20, Mr. James filed the Resource Assessment form which called for a list of the Jameses' total resources, "singly or jointly-owned," as of the date of admission into the nursing home. The $250,000 annuity in contention did not exist on August 10. Rather, Mrs. James purchased the annuity over a month later on September 12, several days prior to Mr. James filing his application for Medicaid. The annuity provided a vehicle for the Jameses to reallocate their resources after Mr. James began receiving care at the facility which, in my opinion, does not change the fact that as of August 10, Mr. James had excess resources for Medicaid eligibility purposes. It would be a different scenario if Mrs. James had an already-existing annuity at the date of her spouse's institutionalization, though that did not occur in this case.

Accordingly, I would find that an annuity which replaces cash existing at the time of institutionalization can be a marketable resource under 42 U.S.C. § 1396r-5, but the record is insufficient to make any decision as to the marketability of

14

Mrs. James's annuity. First, the record is inadequate to resolve the parties' dispute over the implications of the anti-assignment clause in the annuity. While it appears that under Pennsylvania contract law anti-assignment clauses are enforceable if sufficiently justified, *see CGU Life Insurance Co. of America v. Metropolitan Mortgage & Securities Co., Inc.*, 131 F. Supp. 2d 670, 679 (E.D. Pa. 2001), the record fails to account for how any potential assignment would occur. Findings would need to be made as to the rights that the anti-assignment clause seeks to protect for proper application of Pennsylvania contractual enforcement principles.

Additionally, the record is underdeveloped regarding the Department's argument that Mrs. James's annuity is liquid. The Department offers the declaration of Mr. Goodman, an employee of J.G. Wentworth, stating that J.G. Wentworth would pay $170,000 for the rights to payments from the annuity. However, there is no indication in the record that Mrs. James could convert her annuity to cash within twenty days as required under 20 C.F.R. § 416.1201(b). The Department's argument that the annuity has market value does not equate to a finding of liquidity. As demonstrated by 20 C.F.R. § 416.1201(c)(1), automobiles and land are characterized as nonliquid yet those examples carry a market value. Further, although the declaration states that J.G. Wentworth "would require" the annuity owner to "recognize a full sale of their rights" and to enter into "a number of contractual agreements," the declaration fails to answer whether the annuity issuer could refuse to recognize the assignment or explain the details of those additional contractual agreements that would be required. In sum, I would remand to the District Court for additional factfinding relevant to the annuity's marketability.

15