No. 10-3741-cv
**Lopes v. Department of Social Services**

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**


August Term, 2011

Argued:  September 22, 2011                    Final Submission:  December 30, 2011

Decided: October 2, 2012



Docket No. 10-3741-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


JOHN F. LOPES, ATTORNEY-IN-FACT, AMELIA F. LOPES,

           Plaintiff-Appellee,

v.

DEPARTMENT OF SOCIAL SERVICES,
MICHAEL P. STARKOWSKI, COMMISSIONER OF CONNECTICUT
DEPARTMENT OF SOCIAL SERVICES,

           Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: LEVAL, HALL and LOHIER, Circuit Judges.


Plaintiff-appellee John Lopes, through his wife and attorney-in-fact Amelia Lopes, filed an application for Medicaid benefits with the Connecticut Department of Social Services to cover the cost of his nursing home care.  The Commissioner denied the application after determining that a payment stream Amelia Lopes was receiving from a single premium annuity was a "resource" that rendered John Lopes ineligible for Medicaid benefits.  Amelia Lopes challenged this determination in the United States District Court for the District of Connecticut (Hall, J.), arguing that the payment stream was "income" that did not count against her husband's eligibility because the annuity contract prohibited her from assigning her right to payment.  The District Court granted summary judgment to Lopes.  Because we conclude that the applicable regulations and the United States Department of Health and Human Services'

interpretation of those regulations support Lopes's position, we AFFIRM the judgment of the District Court.

RENE H. REIXACH, Woods Oviatt Gilman, LLC, Rochester, NY, for Plaintiff-Appellee.

HUGH BARBER, Assistant Attorney General (Tanya Feliciano DeMattia, Assistant Attorney General, on the brief), for GEORGE JEPSEN, Attorney General of the State of Connecticut, Hartford, CT, for Defendants-Appellants.

LOHIER, Circuit Judge:

This appeal raises the issue of whether a non-assignable annuity contract that provides the spouse of an institutionalized person with monthly payments counts as an excess resource that must be spent down before the institutionalized person can receive Medicaid benefits under the Medicare Catastrophic Coverage Act of 1988 ("MCCA"). Before the United States District Court for the District of Connecticut (Hall, J.), Amelia Lopes ("Lopes"), attorney-in-fact for her husband, John Lopes, challenged the defendants' determination that he is ineligible for Medicaid benefits because Lopes is the payee of a six-year annuity contract that provides her with fixed monthly payments of $2,340.83. Lopes contended that, because the annuity contract contains an anti-assignment provision that prohibits her from assigning her rights thereunder, the annuity payments are "income" that need not be spent down in order for her husband to receive benefits. The Commissioner of the Connecticut Department of Social Services treated the annuity as a "resource" on the ground that Lopes could potentially sell the payment stream from the annuity to a third party notwithstanding the anti-assignment provision. The District Court concluded that the Commissioner's determination rested on more restrictive eligibility criteria than those used by the federal Supplemental Security Income Program, in violation of 42 U.S.C. § 1396a(a)(10)(C)(i), a provision of the MCCA. Accordingly, the court granted Lopes's motion for summary judgment. We AFFIRM the judgment of the District Court.

**BACKGROUND**

A. Statutory Framework

The MCCA requires States to consider the resources of both the institutionalized spouse and the "community spouse" in determining the former's eligibility for Medicaid benefits. 42 U.S.C. § 1396r-5(c)(2)(A). The MCCA also requires States to exclude certain community spouse funds and assets from the calculation of total resources. First, it provides that "[d]uring any month in which an institutionalized spouse is in the institution . . . no income of the community spouse shall be deemed available to the institutionalized spouse." 42 U.S.C. § 1396r-5(b)(1). Second, it excludes specified assets, such as the couple's home and one automobile, from counting against the eligibility of the institutionalized spouse. 42 U.S.C. § 1382b(a). If, after these exclusions, the community spouse's resources still exceed a pre-determined "community spouse resource allowance," the institutionalized spouse is ineligible for Medicaid benefits until the excess resources are depleted. 42 U.S.C. §§ 1396r-5(c)(2)(B), 1396r-5(f)(2)(A). In determining eligibility for benefits under the MCCA, the States must use criteria that are "no more restrictive than the methodology which would be employed under the supplemental social security ['SSI'] program." 42 U.S.C. § 1396a(a)(10)(C)(i).

When Lopes filed her husband's application for Medicaid benefits, the applicable "community spouse resource allowance" was approximately $180,000.

B. Factual Background

Shortly before Lopes filed her husband's application for benefits, her liquid assets exceeded the community spouse resource allowance by about $160,000. Seeking to reduce her resources to below the protected amount, Lopes purchased an immediate single premium annuity with a premium of $166,878.99 from The Hartford Life Insurance Company ("The Hartford"). The annuity contract, which was governed by Connecticut law, provided for monthly payments of $2,340.83 over a period of approximately six years. At Lopes's election, the annuity contract contained an "Assignment Limitation Rider," which provided:

> This contract is not transferable. The rights, title and interest in the contract may not be transferred; nor may such rights, title and interest be assigned, sold, anticipated, alienated, commuted, surrendered, cashed in or pledged as security for a loan. Any attempt to transfer, assign, sell, anticipate, alienate, commute, surrender, cash in or pledge this contract shall be void of any legal effect and shall be unenforceable against [The Hartford].

Lopes requested a letter from The Hartford clarifying the import of the Assignment Limitation Rider. The Hartford confirmed that "neither the Annuity Contract, nor any periodic payments due thereunder can be cashed-in, sold, assigned, or otherwise transferred, pledged, or hypothecated [due to the Assignment Limitation Rider]."

Lopes submitted the application for Medicaid benefits thirteen days after purchasing the annuity. Because the Department of Social Services's Uniform Policy Manual ("UPM") § 4030.47 provides that, for purposes of determining benefit eligibility, "the right to receive income from an annuity is regarded as an available asset, whether or not the annuity is assignable," the Commissioner sought to determine whether Lopes could sell her annuity income stream to a third party notwithstanding the Rider. Although a third party, Peachtree Financial, appears to have been willing to purchase the payment stream for approximately $99,000, Lopes maintained that the annuity was a "fixed income stream[,] . . . not an asset that she [was] required to" liquidate. In May 2010 the Commissioner told Lopes that her husband was ineligible for Medicaid benefits because she had "failed to apply for or try to get assets which may be available to [her] family."

C. Procedural History

Lopes filed suit, claiming that the Commissioner's application of UPM § 4030.47 was more restrictive than an SSI regulation providing that "[i]f the individual has the right, authority or power to liquidate the property . . . it is considered a resource," 20 C.F.R. § 416.1201(a)(1). Lopes also relied on the SSI Program Operations Manual System ("POMS"), which clarifies that an asset is a resource only if the applicant has the "legal right, authority, or power" to liquidate it. POMS § SI 01110.115 (effective Jan. 15, 2008) (emphasis added). In response, the

Commissioner initially argued that the Deficit Reduction Act of 2005, Pub. L. No. 109-171, 120 Stat. 4, 62-64 ("DRA"), supported its denial of Lopes's application, an argument that it abandons on appeal.

The parties cross-moved for summary judgment. The District Court granted Lopes's motion, concluding that, because Lopes would breach her contractual obligations under the anti-assignment clause if she attempted to assign her right to the payment stream, she did not have the "right, authority or power" to liquidate her interest in the annuity, as required by § 416.1201(a)(1) and the corresponding POMS provision.

The Commissioner appealed, arguing, among other things, that (1) the POMS requirement of a "legal right, authority or power" to liquidate the asset is unreasonable in light of the language of § 416.1201(a)(1), which requires only the "right, authority or power" to liquidate; (2) other SSI provisions indicate that a non-assignable annuity payment stream is a countable resource; and (3) treating Lopes's annuity as a resource would conflict with Medicaid's policy goals of providing for those with limited means, because it would permit financially secure applicants to circumvent the Medicaid eligibility requirements by sheltering their assets in non-assignable annuities.

Following oral argument, to aid our analysis, we solicited the views of the United States Department of Health and Human Services ("HHS") regarding "(1) whether the applicable statutes and regulations . . . require an income stream from an irrevocable annuity to be considered as 'income' or as a 'resource,' and (2) the policy implications of resolving this case in favor of the plaintiff or the State." In response, HHS, as amicus curiae, urges us to adopt Lopes's, and the District Court's, interpretation of the relevant SSI regulations for two main reasons: (1) the "natural reading of . . . [§] 416.1201, as clarified in POMS § SI 01110.115, is that [the Social Security Administration] will not require an applicant to renegotiate or, possibly, breach a contract in order to recover the value of a resource, such as a non-assignable annuity, in order to qualify for Medicaid"; and (2) Lopes's retention of the annuity payment stream is not

inconsistent with the Medicaid statute's primary purposes, which are to provide health care for the indigent and protect community spouses from impoverishment while preventing financially secure couples from obtaining Medicaid assistance.

**DISCUSSION**

We review the grant of summary judgment de novo and "will uphold the judgment if the evidence, viewed in the light most favorable to the party against whom it is entered, demonstrates that there are no genuine issues of material fact and that the judgment is warranted as a matter of law." McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 75 (2d Cir. 2010) (quotation marks omitted). Because the material facts are not in dispute here, we consider only whether the annuity is non-assignable and, if so, whether it is income or a resource.[1] The language of the relevant regulations, as clarified in the POMS and in HHS's amicus brief, convinces us that the income stream from Lopes's annuity is properly considered income, not a resource, because the annuity is non-assignable.

A. SSI Regulations

As noted above, the SSI regulation that differentiates between income and resources provides that a community spouse's asset is a resource "[i]f the individual has the right, authority or power to liquidate the property, or his or her share of the property." 20 C.F.R. § 416.1201(a)(1). The Assignment Limitation Rider strips Lopes of both the right to assign her payments under the annuity, by providing that "[t]he rights, title and interest in the contract may not be transferred," and the power to assign her payments, by providing that "[a]ny attempt to transfer, assign . . . [or] cash in . . . this contract shall be void of any legal effect . . . ."[2] Under

---

[1] The Commissioner initially argued that Lopes's application was properly denied because she had failed to cooperate in pursuing potentially available assets. He conceded at oral argument that cooperation is relevant only if we resolve in his favor the "threshold question" of whether the income stream is a resource. Tr. of Oral Arg. at 34.

[2] Although the regulation also references the "authority" to liquidate an asset, 20 C.F.R. § 416.1201(a)(1), the Commissioner does not argue that Lopes has the "authority" to assign the payments, as distinct from having the "right" or "power" to do so.

Connecticut law, this language suffices to make the annuity non-assignable. See Rumbin v. Utica Mut. Ins. Co., 757 A.2d 526, 535 (Conn. 2000) (holding that a general provision prohibiting assignment eliminates a payee's "right to assign, but not his power to do so," and that the latter may be eliminated only through "express language to limit the power to assign or to void the assignment itself").

The Commissioner nonetheless submits that the owner of a non-assignable annuity has the effective "right, authority or power" to liquidate the asset, as long as there is a prospective purchaser for the payment stream. We cannot agree. We recognize that the SSI regulations do not specifically address the status of a "non-assignable" annuity like the one Lopes purchased. But one SSI regulation, 20 C.F.R. § 416.1121, supports the classification of the payment stream from such an annuity as income:

> Some types of unearned income are . . . [a]nnuities, pensions, and other periodic payments. This unearned income is usually related to prior work or service. It includes, for example, private pensions, social security benefits, disability benefits, veterans benefits, worker's compensation, railroad retirement annuities and unemployment insurance benefits.

20 C.F.R. § 416.1121. Section 416.1121 makes clear that payments from an annuity can constitute "unearned income." The provision also generally classifies various non-assignable income streams (social security benefits, disability benefits, and so on) as income, without regard to the existence of a prospective purchaser. These income sources are analogous to Lopes's annuity in both their payment structure and their non-assignability.

The Commissioner points to additional SSI regulations that appear to say that if an individual liquidates a resource before applying for benefits, the receipts from the liquidation are still a resource. For example, the Commissioner cites 20 C.F.R. § 416.1207(e), which provides: "If an individual sells, exchanges or replaces a resource, the receipts are not income. They are still considered to be a resource." 20 C.F.R. § 416.1207(e); see also 20 C.F.R. § 416.1103(a) (providing that "what you receive from the sale or exchange of your own property is not income; it remains a resource"); 20 C.F.R. § 416.1103(c) (providing that "[r]eceipts from the sale,

exchange, or replacement of a resource are not income but are resources that have changed their form," and using as an example: "[i]f you sell your automobile, the money you receive is not income; it is another form of a resource"). In particular, the Commissioner contends that Lopes's annuity qualifies as a resource under these regulations because Lopes converted her excess resources into a non-assignable annuity shortly before she sought benefits.

We reject the argument for the following reasons. Unlike §§ 416.1201(a)(1) and 416.1121, which apply more specifically to the issue in this case and guide more explicitly our consideration of whether Lopes's annuity is a resource, the regulations upon which the Commissioner relies do not address whether the "converted" form of Lopes's assets – the non-assignable annuity – qualifies as a resource. See United States v. Torres-Echavarria, 129 F.3d 692, 699 n.3 (2d Cir. 1997) ("The operative principle of statutory construction is that a specific provision takes precedence over a more general provision."). Instead, they establish only that if Lopes had converted a resource to cash, those cash proceeds would also be a resource. Nor do these regulations establish that Lopes's annuity is a resource merely because it existed in the form of cash shortly before she applied for Medicaid. The Medicaid program categorically excludes certain assets, such as a home and one automobile, from consideration as resources. 42 U.S.C. §§ 1396r-5(c)(5) & 1382b(a). How recently those assets were purchased appears not to matter in determining whether they should be excluded from the relevant pool of resources.[3] Accordingly, that Lopes converted cash to an annuity shortly before applying for Medicaid is irrelevant to whether the annuity, in its current form, qualifies as a resource under the applicable SSI regulations.

---

[3] The regulations account for the possibility that, even while receiving benefits, an individual may trade resources that count against Medicaid eligibility for resources that do not, affecting her benefits eligibility status for the following month: "If, during a month . . . an individual spends a resource or replaces a resource that is not excluded with one that is excluded, the decrease in the value of the resources is counted as of the first moment of the next month." 20 C.F.R. § 416.1207(c).

B. POMS Sub-Regulation

The POMS is a set of guidelines through which the Social Security Administration "further construe[s]" the statutes governing its operations. Clark v. Astrue, 602 F.3d 140, 144 (2d Cir. 2010). We have held that POMS guidelines are entitled to "substantial deference, and will not be disturbed as long as they are reasonable and consistent with the statute." Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998). But we have declined to defer to the POMS where "the plain language of the statute and its implementing regulation do not permit the construction contained within the manuals." Oteze Fowlkes v. Adamec, 432 F.3d 90, 96 (2d Cir. 2005).

As relevant here, the POMS provides that "[a]ssets of any kind are not resources if the individual does not have . . . the legal right, authority or power to liquidate them (provided they are not already in cash) . . . ." POMS § SI 01110.15 (emphasis added). This provision strongly supports the District Court's conclusion that the payment stream from Lopes's non-assignable annuity is income. As discussed above, notwithstanding the existence of a prospective purchaser for the payment stream, the Assignment Limitation Rider divests Lopes of the legal right and the power to direct that the payor pay the annuity benefit directly to a third party. See Rumbin, 757 A.2d at 531, 535.

The Commissioner asserts that the POMS guideline is not entitled to deference because § 416.1201(a)(1), which limits resources to those assets that the applicant has the "right, authority or power" to liquidate, does not require that the applicant also be able to liquidate without incurring legal liability. We are not persuaded. It is reasonable to specify that liquidation must not only be physically possible, but also otherwise permitted by law, in order to qualify the asset as a resource under the MCCA. Without such a clarification, a Medicaid applicant could be required to liquidate such assets as her right to pension payments or property of which she was the trustee. Accordingly, we cannot conclude that the POMS guideline is foreclosed by "the plain language of the . . . implementing regulation." Fowlkes, 432 F.3d at 96.

The Commissioner also argues that even if we were to defer to the POMS interpretation, the payment stream from the annuity contract qualifies as a resource because Lopes could sell it without assigning her rights by simply signing a separate contract promising to pass each payment along to a third party. Tr. of Oral Arg. at 11-13. Assuming for the moment that Lopes could do this without breaching the annuity contract, this argument proves too much. A Medicaid applicant could make a similar agreement regarding any source of income: pension checks, railroad retirement annuities, or even the applicant's weekly income from a current job. Construing these payment streams as resources merely because the applicant could pass them on to a third party in the way the Commissioner describes conflicts with § 416.1121, which establishes that certain payment streams are considered "unearned income" and may not be counted as resources. In rejecting the Commissioner's argument, we agree with the Third Circuit that "[u]nder [a theory permitting an annuitant to sell the income stream], there is no clear limit on the hypothetical transaction proceeds that could be treated as assets, whether based on the sale of a future stream of payments tied to a fixed income retirement account, social security, or even a regular paycheck." James v. Richman, 547 F.3d 214, 219 (3d Cir. 2008).

We conclude that POMS § SI 01110.15, which is reasonable and consistent with § 416.1201(a)(1) and therefore entitled to deference, supports Lopes's argument that the payment stream is income.

C. HHS's Views

In addition to the regulations and POMS guidelines, we also have the benefit of HHS's views in this case, which simply confirm our conclusions. The interpretive guidance of an administrative agency such as HHS "constitute[s] a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944). Even where an agency has expressed its view through a medium other than "the fruits of notice-and-comment rulemaking or formal adjudication," United States v. Mead Corp., 533 U.S. 218, 230 (2001), the "agency's interpretation may merit some deference

whatever its form, given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires." Id. at 234 (citation omitted) (quoting Skidmore, 323 U.S. at 139); see also Christensen v. Harris Cnty., 529 U.S. 576, 587 (2000) (opinion letters from agencies entitled to Skidmore deference).

For that reason, "a reasonable agency determination, when advanced in an amicus brief that is not a post hoc rationalization, may be entitled to some deference on account of the specialized experience and information available to the agency." Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ., 464 F.3d 229, 239 (2d Cir. 2006) (quotation marks, alteration and citation omitted); see also Serricchio v. Wachovia Sec. LLC, 658 F.3d 169, 178 (2d Cir. 2011) (considering agency's views, expressed in an amicus brief solicited by the Court, "for persuasive value." (citing Skidmore, 323 U.S. at 140, and N.Y. S. Rest. Ass'n v. N.Y.C. Bd. of Health, 556 F.3d 114, 130 (2d Cir. 2009))).[4] Of course, regardless of the agency's interpretation, "[t]he plain meaning of language in a regulation governs unless that meaning would lead to absurd results." Forest Watch v. U.S. Forest Serv., 410 F.3d 115, 117 (2d Cir. 2005).

In its amicus brief, HHS makes two persuasive arguments that support the District Court's and Lopes's interpretation of the SSI regulations. First, it interprets § 416.1121, § 416.1201(a)(1), and POMS § SI 01110.15 as classifying income from non-assignable annuities as just that – income. Second, it explains that this interpretation coheres with the policy goals of Medicaid – in particular, protecting community spouses from impoverishment by permitting them to retain some of their assets, while recognizing that couples must apply a fair share of their combined resources toward the cost of care before receiving benefits.

_____

[4] At oral argument, the Commissioner acknowledged that "the secretary [of HHS]'s guidance is essentially controlling." Tr. of Oral Arg. at 15.

HHS further notes that its interpretation of the income/resource distinction is consistent with the treatment of annuities in the DRA. The DRA provides that, so long as annuities are disclosed in Medicaid applications and name the State as the remainder beneficiary, the placement of assets in an annuity will not be considered a suspect "transfer of assets" exposing an applicant to certain penalties.[5] 42 U.S.C. §§ 1396a(a)(18), 1396p(c)(1)(A), 1396p(e)(1). It further provides that these disclosure requirements apply "regardless of whether the annuity is irrevocable or is treated as an asset." 42 U.S.C. § 1396p(e)(1). That the DRA has disclosure requirements for irrevocable annuities, but does not categorically classify them as resources or designate their purchase as an impermissible transfer of assets, supports HHS's view that Congress has not demonstrated an intent to exclude all annuity payment streams from being treated as income. See James, 547 F.3d at 219 ("Congress provided a detailed set of rules governing transactions that it considered suspicious, and the purchase of an annuity is not among them.").

HHS's position as articulated in its amicus brief accords with our reading of the relevant regulations and POMS guideline and is consistent with both Medicaid's policy goals and the DRA. We attach some persuasive value to HHS's views, which in any event only bolster our conclusion that Lopes's annuity payment stream qualifies as income.

We therefore hold that the payment stream from a non-assignable annuity is not a resource for purposes of determining Medicaid eligibility. In doing so, we now join those of our sister circuits that have addressed the same issue. See id. at 218 (holding that even if the community spouse "has the de facto ability to effect a change in ownership," a non-assignable annuity "cannot be treated as an available resource"); Morris v. Okla. Dep't of Human Servs., 685 F.3d 925, 932-34 (10th Cir. 2012) (concluding that entitlement to receive non-assignable

---

[5] Under the DRA, if a couple disposes of any assets for less than fair market value during a specified "look-back" period, the institutionalized spouse becomes ineligible for Medicaid benefits for the length of time that those assets could have covered his or her medical costs. See 42 U.S.C. § 1396p(c)(1)(A).

annuity payments is income, and not a resource); see also Hutcherson v. Ariz. Health Care Cost Containment Sys. Admin., 667 F.3d 1066, 1069 (9th Cir. 2012) (noting that "the Medicaid statute allows the community spouse to purchase an annuity . . . allowing the spouse to convert his or her assets, which are considered in determining the institutionalized spouse's eligibility, to income, which is not considered" (citation omitted)).

## CONCLUSION

For the foregoing reasons, the judgment of the District Court is AFFIRMED.