# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2224

_____

John Geston; Carolyn Geston,

*Plaintiffs - Appellees*,

v.

Maggie D. Anderson, in her official capacity as Interim Executive Director of the
North Dakota Department of Human Services,[1]

*Defendant - Appellant*,

------------------------------

State of Hawaii Department of Human Services; Kansas Department of Health and
Environment; Attorney General of the State of Maryland; State of New Mexico
Human Services Department; Oklahoma Health Care Authority; Rhode Island
Executive Office of Health and Human Services; State of Tennessee; Connecticut
Department of Social Services,

*Amici on Behalf of Appellant.*
_____

Appeal from United States District Court
for the District of North Dakota - Bismarck
_____

---

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), interim Executive
Director of the North Dakota Department of Human Services Maggie D. Anderson is
automatically substituted for Carol K. Olson.

Submitted: December 12, 2012
Filed: September 10, 2013
_____

Before LOKEN, MELLOY, and COLLOTON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

John Geston applied for Medicaid benefits, and the North Dakota Department of Human Services denied his application on the basis that the total assets owned by Geston and his wife exceeded the eligibility limit. The Gestons sued in the district court, arguing that the Department had wrongfully denied the application because it had improperly counted against Mr. Geston's eligibility an annuity owned by his wife. The district court[2] ruled for the Gestons, holding that the North Dakota statute under which the annuity had been deemed countable violates and is preempted by federal Medicaid law. We conclude that the judgment must be affirmed.

I.

A.

Medicaid provides federal funding to States that assist certain needy individuals in obtaining medical care. *See* 42 U.S.C. § 1396a(a)(10). "[D]esigned to advance cooperative federalism," the federal Medicaid program not only gives States the option of participating but also gives participating States significant flexibility in defining many facets of their systems. *Wisc. Dep't of Health & Family Servs. v. Blumer*, 534 U.S. 473, 495 (2002). But to receive funding, participating States must comply with federal statutes and regulations promulgated by the Secretary of the

_____

[2]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

Department of Health and Human Services governing such aspects as who is eligible for care, what services are available, and at what cost those services are provided. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2581 (2012). One such requirement is that state methodologies for determining eligibility must be "no more restrictive" than the federal methodology that would be employed under the supplemental security income program. 42 U.S.C. § 1396a(a)(10)(C)(i). A State's methodology is considered "no more restrictive" if "additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance." *Id.* § 1396a(r)(2)(B).

For an applicant to be eligible for Medicaid benefits, his assets must not exceed statutory limits. *Id.* § 1382(a). An asset may be classified as either a "resource" or "income," and Congress has established limits for each category. *See id.* Resources are "cash or other liquid assets or personal property that an individual . . . owns and could convert to cash to be used for his or her support and maintenance." 20 C.F.R. § 416.1201(a). Income is "anything you receive in cash or in kind that you can use to meet your needs for food and shelter." *Id.* § 416.1102.

Eligibility determinations are more complicated when the applicant is married, because assets of both the spouse receiving care (the "institutionalized spouse") and the spouse living at home (the "community spouse") must be considered. Under the Medicare Catastrophic Coverage Act of 1988 ("the Act"), 42 U.S.C. § 1396 *et seq.*, so-called "spousal impoverishment" provisions permit community spouses to keep a standard amount of assets known as the "community spouse resource allowance" ("spouse allowance"). *See id.* § 1396r-5(f)(2); *see also Blumer*, 534 U.S. at 477-78. The legislative history suggests that this provision was designed to "protect community spouses from pauperization while preventing financially secure couples from obtaining Medicaid assistance." *Blumer*, 534 U.S. at 480 (internal quotation omitted).

-3-

After setting aside the spouse allowance and certain other exemptions, the Act establishes a limit on the total resources a couple may own while still remaining eligible for Medicaid benefits. 42 U.S.C. § 1382(a)(1)(B). To determine the institutionalized spouse's eligibility, therefore, States must consider "*resources* held by either the institutionalized spouse, community spouse, or both . . . to be available to the institutionalized spouse." *Id.* § 1396r-5(c)(2)(A) (emphasis added). The Act excludes, however, the community spouse's *income* from eligibility determinations: "[d]uring any month in which an institutionalized spouse is in the institution, . . . no income of the community spouse shall be deemed available to the institutionalized spouse." *Id.* § 1396r-5(b)(1).

Because resources count toward the institutionalized spouse's eligibility while the community spouse's income does not, an asset's classification as a "resource" of the couple or "income" of the community spouse can determine whether an institutionalized spouse qualifies for benefits.

B.

John Geston entered a full-time care facility on July 21, 2010. His wife continued living in their home in Bismarck, North Dakota. In November 2011, the Gestons filed an "asset assessment" form with the Burleigh County Social Service Board. *See* 42 U.S.C. § 1396r-5(c)(1)(B). The Board determined that the Gestons' countable assets exceeded the statutory limit by $586,854.80. The Gestons then began to reduce their resources. First, they purchased certain assets that do not count under the statute toward an applicant's eligibility for Medicaid: they sold their primary residence and purchased a more expensive home, Mrs. Geston sold her car and purchased a more expensive car, and each purchased prepaid burial services. *See* 42 U.S.C. § 1382b(a)(1), (2)(A), (2)(B). Second, Mrs. Geston purchased a single-premium (*i.e.*, lump-sum) immediate annuity from Employees Life Company for $400,000. The annuity was scheduled to pay her $2,734.65 per month over 13 years,

-4-

for a total return of $426,605.40. The annuity contract provides that the contract is "irrevocable" and cannot be "transferred, assigned, surrendered or commuted during [Mrs. Geston's] lifetime." A separate provision prohibits Mrs. Geston from revoking the recipient of the payment stream.

After these expenditures, Mr. Geston applied for Medicaid benefits, and the North Dakota Department of Human Services ("the Department") denied his application. The Department reasoned that the remaining value of the corpus of the annuity—*i.e.*, the difference between the purchase price and the payments Mrs. Geston had already received—constituted a countable resource under North Dakota's Medicaid statute, and that as a result the Gestons' assets "exceeded the Medicaid asset limit." Specifically, North Dakota Century Code § 50-24.1-02.8(7)(b) provides that annuity payments received by a community spouse will be treated as income only if they do not raise the community spouse's total income over a certain threshold. Because Mrs. Geston's income including the annuity exceeded that threshold, the Department deemed it a resource countable toward Mr. Geston's eligibility.

The Gestons brought this action against the Executive Director of the Department in her official capacity, seeking declaratory and injunctive relief, pursuant to 42 U.S.C. § 1983 and the Supremacy Clause of the United States Constitution. The district court concluded that there was a conflict between federal and state law, because federal law treated the annuity as Mrs. Geston's uncounted *income*, whereas the State classified the annuity as a countable *resource* and deemed Mr. Geston ineligible as a result. The court thus granted the Gestons' motion for summary judgment, because the North Dakota statute was "more restrictive" than the federal methodology, 42 U.S.C. § 1396a(a)(10)(C)(i), (r)(2)(B), and because it conflicted with the federal provision that prohibits a State from counting the community spouse's income toward the institutionalized spouse's eligibility. *Id.* § 1396r-5(b)(1). The Department appeals, arguing that federal law allows the State to count the annuity as a resource of the couple in determining Mr. Geston's eligibility.

-5-

II.

A.

Defending the district court's decision, the Gestons rely principally on two provisions of federal law to establish that Mrs. Geston's annuity is unearned income that North Dakota may not count as a resource when determining Mr. Geston's eligibility for Medicaid benefits. Like the other circuits to address this issue, we conclude that the arguments are persuasive. *See Lopes v. Dep't of Social Servs.*, 696 F.3d 180 (2d Cir. 2012); *James v. Richman*, 547 F.3d 214 (3d Cir. 2008).

First, Congress defined "income" for purposes of eligibility determinations to include both "earned" and "unearned" income, 42 U.S.C. § 1382a(a), and it defined unearned income to include "any payments received as an annuity . . . benefit." *Id.* § 1382a(a)(2)(B). The Department, however, contends that this provision does not apply to the sort of annuity purchased by Mrs. Geston, and that North Dakota may define Mrs. Geston's annuity benefit as a resource rather than income.

The Department argues that the term "annuity" in § 1382a(a)(2)(B) means "retirement annuity" as defined by § 408 of the Internal Revenue Code. IRC § 408 defines certain types of retirement accounts that receive favorable tax treatment, including a "retirement annuity." *See, e.g.*, 26 U.S.C. § 408(b). Among the requirements for these annuities is an annual premium limit; Mrs. Geston's premium exceeds the limit, so it would not fit within the statutory term "annuity" under the Department's definition.

The Department, citing the canon of *noscitur a sociis*, urges that "annuity . . . benefit" in § 1382a(a)(2)(B) must be known by its associates. The subsection in full defines unearned income as "any payments received as an annuity, pension, retirement, or disability benefit, including veterans' compensation and pensions,

workmen's compensation payments, old-age, survivors, and disability insurance benefits, railroad retirement annuities and pensions, and unemployment insurance benefits." *Id.* § 1382a(a)(2)(B). The Department invokes *Eilbert v. Pelican* (*In re Eilbert*), 162 F.3d 523 (8th Cir. 1998), where this court considered an Iowa statute exempting from execution by a judgment creditor "[t]he debtor's rights in . . . [a] payment or a portion of a payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service" under certain conditions. *Id*. at 526. Applying the canons of *noscitur a sociis* and *ejusdem generis*, the court determined that "annuity" must be defined "by reference to the words surrounding it." *Id.* at 527. Because (1) the specific term "pension" refers to a "retirement benefit" that constitutes "[d]eferred compensation for services rendered," and (2) the term "annuity" in the statute was limited by the phrase "on account of . . . age," the court concluded that the statutory term "annuity" meant "a plan or contract to provide benefits in lieu of earnings after retirement." *Id.* Drawing a parallel to the statutory provision at issue in *Eilbert*, the Department maintains that the terms accompanying "annuity . . . benefit" show that the benefits defined as unearned income are limited to those encompassed by IRC § 408.

We find the argument wanting, because there is not a sufficient basis in the text of § 1382a(a)(2)(B) to incorporate IRC § 408. Congress did not require that "pension . . . benefit[s]" or "retirement . . . benefit[s]" in § 1382a(a)(2)(B) comply with § 408 for their payment streams to be treated as unearned income, and the Department does not satisfactorily explain how a "disability benefit"—whether obtained through private insurance or a public program—relates to § 408. Nor does *Eilbert* provide a compelling analogy, because the statutes are materially different. Section 1382a(a)(2)(B), unlike the Iowa statute, includes the enumerated term "retirement . . . benefit," so "annuity . . . benefit" must have independent meaning. Section 1382a(a)(2)(B) also does not limit annuity payments to those made "on account of . . . age." *Eilbert* cited "the conjunction" of the words "annuity" and "age" in concluding that "annuity" in the Iowa statute described "a plan or contract to

-7-

provide benefits in lieu of earnings after retirement." 162 F.3d at 527. The enumerated terms and examples in § 1382a(a)(2)(B), by contrast, include "disability benefit," "workmen's compensation payments," and "unemployment insurance benefits," all of which may be received independent of age. *Eilbert* is thus not good authority for construing "annuity benefit" in the Medicaid statute to mean an annuity that complies with IRC § 408.

The Department's argument also fails to account for Congress's incorporation of IRC § 408 to limit the meaning of "annuity" elsewhere in the Act. *See* 42 U.S.C. § 1396p(c)(1)(G)(i)(I). Because Congress defined "annuity" by reference to § 408 in another provision of the same Act, but did not do so here, we presume that the term is not so circumscribed in § 1382a(a)(2)(B). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation omitted).

The Department's *amici* invoke a corresponding Social Security regulation to support a different proposed limitation on the term "annuity benefit," but that argument fares no better. The agency provides that some types of unearned income are "[a]nnuities, pensions, and other periodic payments," which are "*usually* related to prior work or service." 20 C.F.R. § 416.1121(a) (emphasis added). The *amici* cite this rule to show that annuity benefits in § 1382a(a)(2)(B) must relate to employment. But the caveat "usually" in the regulation defeats the contention. "Usually" implies "not always," so the regulation does not limit unearned income to annuities that are related to prior work or service.

For the canon of *noscitur a sociis* to apply, all of the terms must share a common denominator to which the list may be reduced. *Polaroid Corp. v. C.I.R.*, 278 F.2d 148, 152 (1st Cir. 1960); Antonin Scalia & Bryan A. Garner, *Reading Law: The*

*Interpretation of Legal Texts* 196 (1st ed. 2012). Neither the Department's proposed denominator of IRC § 408 nor the *amici*'s suggestion of relation to employment satisfies this commonality requirement. Without a satisfactory basis to narrow the plain text, we ordinarily resist reading words into a statute that do not appear on its face. *See Bates v. United States*, 522 U.S. 23, 29 (1997).

The Gestons rely on a second provision to complement the statutory definition of "unearned income"—namely, a federal regulation defining "resources" for purposes of an eligibility determination. The regulation provides: "If the individual has the right, authority or power to liquidate the property or his or her share of the property, it is considered a resource. If a property right cannot be liquidated, the property will not be considered a resource of the individual (or spouse)." 20 C.F.R. § 416.1201(a)(1). Consistent with the agency's interpretation, Social Security Administration, Program Operations Manual Systems § SI 01110.115.A, and the federal government's litigating position, *see* Br. for U.S. Dep't of Health & Human Servs. as *Amicus Curiae* at 11-12, *Lopes*, 696 F.3d 180, we think the regulation naturally refers to a "legal" right, authority, or power to liquidate. What other sort of "right" or "power" would be at issue? If the regulation merely referred to a raw power to liquidate—even in breach of the contract or violation of law—then it would impose virtually no limitation, for a pair of unscrupulous actors can reduce almost anything of value to a dollar amount.

Mrs. Geston's annuity contract expressly provides that she cannot revoke or transfer the contract, and that she cannot change the recipient of the payment stream during her lifetime. Because Mrs. Geston has no "right, authority or power" to liquidate the annuity, 20 C.F.R. § 416.1201(a)(1), the annuity benefits are not a resource, but rather are income as indicated by the statute defining "unearned income." Therefore, the Department applies a more restrictive methodology by classifying the annuity benefits as a resource that counts against Mr. Geston's eligibility for Medicaid benefits.

B.

The Department resists this conclusion, citing several federal provisions of its own. We conclude that these counter-arguments are unavailing.

The Department cites a subsection of the Deficit Reduction Act of 2005 that refers to denying eligibility for Medicaid benefits based on annuities. In this law, Congress directed that States must require institutional and community spouses to disclose, as a condition for the provision of Medicaid benefits, any interests in "an annuity . . . regardless of whether the annuity is irrevocable or is treated as an asset." 42 U.S.C. § 1396p(e)(1). The enactment also established that a Medicaid beneficiary must designate the State as a preferred remainder beneficiary in the annuity (ahead of children or other family members, for example) for medical assistance furnished to the individual. *Id.* § 1396p(e)(1), (2)(A). The final paragraph of the relevant subsection provides: "Nothing in this subsection shall be construed as preventing a State from denying eligibility for medical assistance for an individual based on the income or resources derived from an annuity described in paragraph (1)." *Id.* § 1396p(e)(4).

The Department argues that the final paragraph gave participating States additional authority to deny eligibility based on annuities where the State believes that the use of an annuity is "abusive." We think the paragraph simply maintained the *status quo*. It does not purport to change eligibility criteria, and it does not speak to whether annuity benefits are "income" or "resources." It clarifies that the new disclosure provisions do not restrict a State's authority to deny eligibility on the basis of an annuity where the State otherwise has authority to do so. If an annuity is transferable or revocable and thus can be liquidated, for example, then the regulations provide that the annuity may be a resource, and a State presumably could deny eligibility for medical assistance based on resources derived from the annuity. Or if an individual exchanges a transferable annuity for cash, then the individual would derive resources from that annuity, and the State could deny eligibility based on those

-10-

resources. But where other provisions of law define annuity benefits as unearned income, § 1396p(e)(4) did not authorize States to recharacterize those benefits as resources.

The Department also cites regulations that say: "If an individual sells, exchanges or replaces a resource, the receipts are not income. They are still considered to be a resource." 20 C.F.R. § 416.1207(e); *see also id.* § 416.1103(c). One of the regulations explains, for example, that "[i]f you sell your automobile, the money you receive is not income; it is another form of a resource." *Id.* § 416.1103(c). Another example says that an exchange of cash for stock is a conversion of one resource into another resource. *Id.* § 416.1207(e). Because the Gestons used $400,000 in countable resources to purchase the annuity in Mrs. Geston's name after Mr. Geston's institutionalization, the Department argues that the annuity received in exchange for cash is also a resource.

These regulations do not carry the day for the Department. One reason has to do with timing. The regulations speak to the exchange of resources as of the date when a person applies for benefits or thereafter. *See id.* § 416.1101 (defining "[y]ou" in the subpart containing § 416.1103(c) to mean "a person who is applying for, or already receiving, . . . benefits"); *id.* § 416.1202(c) (defining "*individual*" for purposes of subpart containing § 416.1207(e) to mean an "eligible" individual, *i.e.*, one who has been deemed "eligible" after application for benefits, *see* 42 U.S.C. § 1396r-5(c)(2)). They do not apply retrospectively to exchanges that occur prior to an application.

The regulations on receipts from the exchange of a resource also do not address the situation at issue here—that is, an exchange of a resource for an annuity that is defined elsewhere as "unearned income" and excluded from the definition of "resource" because it is irrevocable and nontransferable. The regulations establish that an applicant or beneficiary cannot reduce his resources by exchanging one resource for another: an automobile for cash, or cash for stock. *See Lopes*, 696 F.3d

-11-

at 186. They thereby prohibit an applicant from selling his property, retaining the same amount of liquid assets, and yet qualifying for Medicaid benefits. The rules do not, however, speak to transactions like the annuity purchase by Mrs. Geston, where the resource is exchanged for property that the spouse has no right, power, or authority to liquidate.

The Department next contends that Mrs. Geston's use of the couple's resources to purchase the annuity constituted an excessive increase in her spouse allowance in violation of a provision commonly known as the "income-first rule." Under this rule, a community spouse is entitled to additional resources on top of the spouse allowance if the income available to her falls short of a standard minimum amount. 42 U.S.C. § 1396r-5(d)(6), (e)(2)(C). Mrs. Geston had sufficient income to meet this minimum when Mr. Geston applied for benefits. The Department thus argues that she was not entitled to resources above the spouse allowance, and that the annuity purchase effectively gave her $400,000 in additional resources in violation of the income-first rule.

Though cast in terms of the income-first rule, this argument is another version of the argument that the State may classify the annuity as a resource because it was purchased with the couple's resources after Mr. Geston entered the institution. States, however, must classify assets as resources at the time the institutionalized spouse files an application for benefits. *See id.* § 1396r-5(c)(2). If resources are converted to uncountable income after institutionalization but before the filing of an application,

then they do not affect the institutionalized spouse's eligibility. When Mr. Geston applied for Medicaid benefits, Mrs. Geston had already acquired the annuity. At the relevant time, therefore, the annuity was an uncountable stream of unearned income, not a resource. It did not implicate the income-first rule, because it did not increase Mrs. Geston's resources.

C.

Several remaining arguments for reversal are not convincing. The Department argues that the annuity counts toward Mr. Geston's eligibility under the separate set of rules governing classification of "trust-like devices," *see* 42 U.S.C. § 1396p(d), under which trusts and similar instruments are generally treated as either resources or transfers of assets subject to certain fair-market-value requirements. *See id.* §§ 1396p(d)(3), 1396p(c)(1). Congress expressly provided, however, that the statutory term "trust" includes annuities "only to such extent and in such manner as the Secretary [of the Department of Health and Human Services] specifies." *Id.* § 1396p(d)(6). Because the Secretary has not so "specifie[d]," the argument fails.

The Department next contends that only the portion of the annuity payments that constitutes interest on Mrs. Geston's investment (*i.e.*, the amount she receives monthly on top of the amount that represents a return of her original premium) should be considered income. The regulations provide that other types of investment instruments like stocks, bonds, and savings accounts are considered "liquid resources" countable toward eligibility, 20 C.F.R. § 416.1201(b), but that "[d]ividends and interest" on those instruments "are returns on capital investments" and are considered unearned income. *Id.* § 416.1121(c). Only $170.55 out of the monthly $2,734.65 is interest in this sense, so the Department argues that at most $23,922.87 of the remaining $383,582.10 to be dispersed to Mrs. Geston may be excluded from resources that must be counted toward Mr. Geston's eligibility. Neither statute nor regulation, however, classifies annuity benefits in the same way as stocks, bonds, financial accounts, and other similar instruments. The statute treats annuity benefits as unearned income, and the regulations provide that because the annuity cannot be liquidated, it is not a resource.

The Department's final argument is that the contractual provisions that prevent Mrs. Geston from liquidating the annuity are invalid because they are contrary to the

State's public policy. The Department reasons that (1) the State's policy is to provide Medicaid funding for only the truly needy, (2) nontransferability provisions in annuity contracts enable those other than the truly needy to access public funds, and (3) the nontransferability provisions in this case violate the State's public policy of providing Medicaid funds only to the truly needy because they give the Gestons access to public funding. The Department's position is untenable in light of the present federal scheme. If the State's public policy requires it to count as resources certain annuities that federal law excludes from the scope of resources that may be considered in making eligibility determinations, then the State's methodology is more restrictive than the federal methodology. *See* 42 U.S.C § 1396a(a)(10)(C)(i), (r)(2)(B).

\*　　　\*　　　\*

The Department and its *amici* argue vigorously that permitting the Gestons to qualify for Medicaid benefits, despite Mrs. Geston's recent acquisition of the annuity, undermines the purposes of the program. As we view it, however, the statutes and regulations as presently configured preclude the Department's position. The Department's litigation position suggests policy options: the meaning of "annuity" in § 1382a(a)(2)(B) and accompanying regulations could be limited to those that comply with IRC § 408; certain annuities could be treated in the same way as stocks, bonds, savings accounts, and other investments; the Secretary could designate certain annuities as "trust-like devices." We see no warrant, however, to implement any of these measures through judicial decision under the current law and believe that the suggestions must be directed to the policymaking branches.

The judgment of the district court is affirmed.

_____